Annie P. Turner *v.* R. Lester Harris, *et ux.*

(*Nashville,* December Term, 1954.)

Opinion filed August 2, 1955.

Carmack Cochran and Martin & Cochran, all of Nashville, for appellant.

Elkin Garfinkle and Alvin M. Brandt, both of Nashville, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This is an appeal by Annie P. Turner, from the action of the Chancellor in sustaining the demurrer of R. Lester Harris and wife, to complainant's bill seeking a permanent injunction to restrain them from transferring or incumbering certain described property of which they are alleged to be the owners.

The bill alleges that she sustained personal injuries as the result of the admitted negligence of the defendant, Mrs. Thelma W. Harris. The negligence complained of was the failure of Mrs. Harris to observe a stop sign before entering an arterial highway, and as the proximate result of such negligence in operating her automobile she collided with the automobile which complainant was driving upon the arterial street or highway. The resulting damage was $10,000 for personal injuries and $1,000 as damages to her automobile. The bill further alleges that she and her husband had brought suit in the Circuit Court of Davidson County against Harris and wife for the injuries and damages growing out of said accident, Mrs. Annie P. Turner suing for $35,000 damages and her husband, James R. Turner, suing to recover the sum of $15,000 for loss of services, hospital and medical expenses.

At the time of the accident the defendant, Mrs. Harris, stated that she and her husband had two automobiles; the one involved in the accident *was not covered by any public liability insurance policy,* while the other, which belonged to them, was covered by insurance. The bill further alleges that as a result of the foregoing situation the defendants could not comply with the Financial Responsibility Law of the State of Tennessee, Chapter 206 of the Acts of 1951, Code Section 2715.49 et seq., by

exhibiting an insurance policy as required by law, and that the said defendants should be required to give a financial responsibility bond as provided by statute, or deposit with the Commissioner of Safety of the State the sum of $11,000 in cash. The complainant further alleged that she had fully complied with the Financial Responsibility Law by filing proper affidavits as to the extent of her damage.

The defendants are alleged to be the owners of three tracts of land in Davidson County, for which they paid a total purchase price of $33,500 and that the complainant, Mrs. Annie P. Turner, has an equitable lien upon said real estate to require a compliance with the Financial Responsibility Law "to the end that her claim for damages could be satisfied; and that unless her lien is perfected that the defendants could transfer and dispose of their property and thus defeat her right to damages."

It is further alleged in the bill that complainants "had no adequate remedy at law to prevent conveyances by the defendants."

The bill prayed for an injunction to restrain the defendants from transferring or incumbering the property described. The writ of injunction was accordingly issued as prayed for in the bill.

The defendants demurred to the bill on the following grounds:

"There is no equity on the face of the bill because the complainant asserts no basis for a lien on defendants' property and there is no legal or equitable grounds for an injunction restraining the defendants from their control or disposition of their property."

The Chancellor sustained the demurrer, and complainant appealed assigning the action of the Chancellor as error.

The question to be decided is clearly stated on the brief of appellant as follows:

"*Where 'C' has been injured through the unlawful and negligent operation of an automobile by 'D' who is without public liability insurance, but who has substantial real property, does the Chancery Court have jurisdiction to protect the property rights of 'C' by preventing 'D' from encumbering or disposing of his property until he has complied with the Financial Responsibility Law of Tennessee by giving bond or posting cash with the Commissioner of Safety for the ultimate benefit of 'C'?*" (Emphasis supplied by counsel.)

Following this correct statement of the issue the counsel make the following frank admission: "The question is novel. The question is new. It has never before been passed upon by any Court of last resort, so far as we have been able to discover."

We approach the consideration of the issue with eagerness because it is novel and is apparently without precedent.

The "Financial Responsibility Law", which is the basis of the complainant's suit, was enacted by the Legislature in 1951 and is carried into the Code at 2715.49 et seq. These Code Sections reflect the public policy of the State and are enforceable in the exercise of the State's police power. The statute is in derogation of the common law.

The demurrer admits the following allegations in the bill: (1) that the complainant was injured, and sustained damages specified, as a direct result of the unlawful act of Mrs. Thelma Harris in operating her automobile; (2) that the defendant is required to comply with the Financial Responsibility Law as charged in the bill; (3)

that the defendants have failed to comply therewith, although financially able to do so, the said Thelma Harris being the owner of two pieces of real estate for which she paid $17,000; and (4) that the complainant fully complied with the law.

. The several Code Sections upon which the complainant relies, and which are pertinent to the issue now before us, are the following (we refer to the sections in the order in which they are discussed in the complainant's brief).

Section 2715.51 (Code Supplement) provides in substance that the operator of a motor vehicle, which is in any manner involved in an accident in which any person is killed or injured, or in which damage to property of any one person, including himself, in excess of $50 is sustained shall within ten days after such accident report the matter in writing to the Commissioner of Safety. The operator or owner shall make such other and additional reports relating to such accident as the Commissioner shall require.

Section 2715.52 (Code Supplement) provides in substance that the Commissioner, within sixty days after receipt of a motor vehicle accident report, shall revoke the license of each operator and all registrations of each owner of a motor vehicle in any manner involved in such accident, unless such operator or owner, or both, *shall show financial responsibility for the accident.*

Section 2715.49, subd. N, (Code Supplement) provides that financial responsibility may be only shown (1) by filing written proof of insurance coverage with the Commissioner on forms approved by the Commission; or (2) the deposit of cash with the Commissioner in the amount of $11,000 or in the total amount of all damages suffered -whichever is less; or (3) the execution and filing of a bond with the Commissioner; or (4) by sub-

mitting to the Commissioner of notarized releases executed by all parties who had previously filed claims with the Department of Safety as a result of the accident.

The statute further provides that money deposited with the Commissioner in compliance with the Act shall be applicable only to the payment of any judgment rendered against the party making the deposit. If no court action is. brought within one year after the accident the money deposited shall be returned to the one depositing it.

The requirements of the Act, as to showing of financial responsibility, does not apply to any owner or operator who submits satisfactory proof to the Commissioner that he has settled all claims against him resulting from the accident.

Section 2715.61 makes it unlawful to reregister any vehicle, the registration of which has been revoked, without first having the written approval of the Commissioner. The owner is likewise forbidden to sell such vehicle "without first informing the purchaser that the registration of the vehicle has been revoked and that before it can again be registered the written consent of the commissioner must be obtained." The penalty for violating the foregoing provision, "or any part thereof" shall be a fine of "not less than $25.00 or more than $500.00, or be imprisoned for not more than six months or both."

There is no provision in the foregoing Financial Responsibility Law whereby the injured person is given a lien upon the defendant's automobile, or any right of action to attach or impound by way of an injunction any property of the defendant wrongdoer to satisfy a claim for damages to person or property resulting from an accident.

As we construe the statute the specific penalty imposed upon a wrongdoer, such as we have here, for his or her

failure to comply with the Act is (1) cancellation of the owner or operator's license and revocation of the registration of the vehicle involved and the sale thereof; (2) fine and imprisonment, one or both, for violating the provisions of the Act as above pointed out.

Contention is made by the complainant that the manifest purpose of the Act is that persons responsible for an accident should respond in damages, and that to insure the satisfaction of a claim for damages the alleged wrongdoer is required to make bond or deposit funds in the event he is not able to provide an insurance coverage; that "she has a definite and positive property right that the defendants comply with the Financial Responsibility Law."

The foregoing is emphasized by able counsel both on the brief and in oral argument. But the suit cannot be maintained on the theory that complainant has a "definite and positive property right" in the statute's provisions. Our latest decision on this question is *Dowlen* v. *Fitch,* 196 Tenn. 206, 211, 264 S. W. (2d) 824, 41 A. L. R. (2d) 791. See also *Collins* v. *East Tennessee, V. & G. R. Co.,* 56 Tenn. 841, 842, wherein the Court holds, "The right to a particular remedy is not a *vested* right." "It is said that a person has no property or vested interest in any rule of the common law". 11 Am. Jur., p. 899, and cases cited in the footnotes.

There can be no doubt as to the intention of the Legislature in passing this statute; that it is a proper subject of police regulation is not disputed. The complainant says by way of argument, "That this is not the case of a plaintiff suing for damages and seeking to enjoin the disposition of property pending suit." The relief sought is to have the Court declare that the complainant is entitled to impound the defendant's property (other than

the vehicle involved) pursuant to a statutory right, i. e. the Financial Responsibility Law. The bill does not pray for a lien or attachment upon the property. Indeed the Act does not provide for either as a remedy. It prays solely for injunctive relief. The plain inference from the argument is that the Court should provide a remedy in the exercise of its inherent authority, i. e. that *equity will not suffer a right to go without a remedy*. This is the original source of the entire equitable jurisdiction.

From the foregoing presentation of the issue, we are not asked to declare a common law lien, statutory lien or equitable lien upon defendant's real estate, but to say in substance that said property is now the complainant's, or so much of it as may be necessary to satisfy her claim for damages. In other words the claim is in the nature of an equitable lien.

We think the question is conceded that whatever right the complainant may have it is within the four corners of the Act. We reach this conclusion because of the complainant's claim that she has a "property right" in the Act. The jurisdiction of the Chancery Court is invoked to provide a remedy because she says "there is no adequate remedy at law."

But we think the Act provides a partial remedy. The injured person is empowered to prevent the defendant from driving the car involved, *or any car,* and to prevent its use or disposition, unless complainant's claim for damages is satisfied. Moreover the defendant is subject to prosecution and imprisonment for any violation of the law. Of course, there could be no prosecution if the injured party is fully compensated. The penalty thus imposed is effective no doubt in many cases. It is reasonable to suppose (and the Legislature doubtless had it in mind) that in all cases where the amount of damage was not

excessive the offending motorist would choose to pay it rather than to lose his automobile entirely and also his right to drive another car. But it is not a complete remedy. Now we are asked to provide an additional remedy not found in the statute. Considering the plight in which the complainant finds herself, it is not unreasonable that the power of the Chancery Court is invoked in this regard.

The maxim, to which we have referred, is as old as the High Court of Chancery. It was the King's prerogative that if the law provided no remedy under a given state of facts, it was "disgraceful to his kingdom", if he did not intervene, as the source of all lawful authority, to prevent a wrong to one of his subjects. But equity does not right every wrong; and Judges and Chancellors cannot be expected to find a remedy for every wrong that is perpetrated in this complex mechanical age, even though a high purpose may, and often does, impel them to do so.

Where the State has, in the exercise of its police power, undertaken by appropriate legislation·to regulate traffic upon streets and highways, providing penalties and remedies to promote the safety of the traveling public, it is not within the prerogative of the judiciary to provide additional remedies and safeguards.

"The general rule is that nothing may be read into a statute which is not within the manifest intention of the legislature as gathered from the act itself, and that a statute should not be construed any more broadly or given any greater effect than its terms require. Where the language of the statute is clear in limiting its application to a particular class of cases and leaves no room for doubt as to the intention of the legislature, there is no authority to transcend or add to the statute which may not be enlarged,

stretched, or expanded, or extended to cognate or related cases not falling within its provisions." 50 Am. Jur., Section 229.

"* * * where the statute creates a new right and prescribes the remedy for its enforcement, the remedy prescribed is exclusive." Sutherland on Statutory Construction, Vol. 3, Section 5812. See also 82 C. J. S., Statutes, Sec. 374, p. 869.

The "Financial Responsibility Law" creates a "new right", and prescribes a limited remedy, as well as penalties, for its non-observance. The inherent power of the Chancery Court is invoked by the complainant to provide an equitable remedy, or at least a more effective one, against the defendants. While it is often mentioned as a truism *"that equity delights to do complete justice and not by halves"*, the jurisdiction of the court is not so latitudinous that it is authorized to supply deficiencies in a statute by providing additional remedies for its more effectual enforcement.

We are loath to rule against the complainant, as was the learned Chancellor. But we feel that the relief prayed for is in excess of the Court's equitable jurisdiction. The factual situation, as disclosed in the record, conclusively shows the need for additional remedial legislation to safeguard individuals, as well as the general public, from the tortious acts of irresponsible motorists who are a constant menace upon the streets and highways of the State.

The Chancellor's decree is affirmed.