**Herbert E. WYATT and Brenda Wyatt, his wife, Plaintiffs–Appellants,**

v.

**A–BEST PRODUCTS COMPANY, INC., et al., Defendants–Appellees.**

Court of Appeals of Tennessee, Eastern Section.

November 30, 1995.

Petition to Rehear Granted in Part and Denied in Part; Opinion Modified Dec. 28, 1995.

Application for Permission to Appeal Denied by Supreme Court May 28, 1996.

George A. Weber, III, Mike G. Nassios, Jere Franklin Ownby, III, of The Law Offices of Peter G. Angelos, Knoxville, and Jerry J. Phillips, of counsel, for Appellants.

Louis C. Woolf, Hugh B. Bright, M. Denise Moretz, J. Ford Little, of Woolf, McClane, Bright, Allen & Carpenter, Knoxville, for Appellee Owens–Illinois, Inc.

Donald F. Paine, Dwight E. Tarwater, Thomas A. Bickers, Andrew R. Tillman, Knoxville, for Appellee Owens–Corning Fiberglas Corporation.

Charles W. Burson, Attorney General and Reporter, Kevin Steiling, Assistant Attorney

General, for Intervenor, Attorney General of the State of Tennessee.

Paul T. Gillenwater of Gillenwater, Nichol & Ames, Knoxville, and David F. Partlett, Vanderbilt University School of Law, Nashville, filed Amicus Curiae brief.

Michael Y. Rowland, Janet Edwards, of Rowland & Rowland, P.C., Knoxville, filed Amicus Curiae brief.

David E. Waite of Brown & Waite, Knoxville, filed Amicus Curiae brief.

Robert H. Hood, G. Mark Phillips, James D. Gandy, III, Joseph C. Wilson, IV, of the Hood Law Firm, Charleston, S.C., and R. Hunter Cagle of Kennerly, Montgomery & Finley, Knoxville, filed brief of Amici A.P. Green Industries, Inc., Armstrong World Industries, Inc., Asbestos Claims Management Corporation f/k/a National Gypsum Company, GAF Corporation, T & N PLC, and United States Gypsum Company.

SUSANO, Judge.

The complaint in this case seeks damages for lung disease caused by exposure to asbestos. Herbert E. Wyatt (Wyatt) sued numerous manufacturers and sellers of products to which he was allegedly exposed during his working years. His wife, Brenda Wyatt, sued for loss of consortium. The trial judge granted the defendants summary judgment. He held that the Wyatts' action was time-barred by the ten-year statute of repose found at T.C.A. § 29–28–103(a)[1], a part of the Tennessee Products Liability Act of 1978 (TPLA)[2]. He also concluded that the 1979 amendment[3] to the TPLA, codified at T.C.A. § 29–28–103(b)[4], the so-called asbestos exception, could not be constitutionally construed to revive the Wyatts' already-barred

claims. This latter holding was based on the trial court's determination that the defendants had acquired a vested right in repose as a result of the 1978 enactment of the TPLA, and that this vested right could not be retroactively divested by the asbestos exception. The trial court also struck down the asbestos exception as unconstitutional class legislation in violation of Article XI, Section 8 of the Tennessee Constitution. The Wyatts appeal, raising issues that pose the following questions:

1. Did the defendants acquire a right in the bar of the ten-year period of limitations that could not be divested by enactment of the asbestos exception without running afoul of Article I, Section 20, of the Tennessee Constitution?

2. Is the asbestos exception unconstitutional class legislation in violation of Article XI, Section 8, of the Tennessee Constitution?

I

Wyatt worked as a carpenter from 1951 to 1984. He claims employment-related exposure to products containing asbestos that were manufactured and/or sold by the defendants. Although it is not clear when he was last exposed to asbestos, it is undisputed that none of the defendants sold or distributed any asbestos-containing products relevant to this action within ten years of July 1, 1978, the effective date of the original enactment of the TPLA.

In 1984, Wyatt opted for early retirement due to health problems, including unexplained shortness of breath. In May, 1989, he was diagnosed with asbestosis. He and

---

1. T.C.A. § 29–28–103(a) provides, in pertinent part, as follows:

   Any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought within the period fixed by §§ 28–3–104, 28–3–105, 28–3–202 and 47–2–725, but notwithstanding any exceptions to these provisions it must be brought within six (6) years of the date of injury, *in any event, the action must be brought within ten (10) years from the date on which the product was first purchased for use or consumption ...*

(Emphasis added.)

2. Chapter 703, Public Acts of 1978, effective July 1, 1978.

3. Chapter 162, Public Acts of 1979, effective July 1, 1979.

4. T.C.A. § 29–28–103(b) provides, in pertinent part, as follows:

   The foregoing limitation of actions [T.C.A. § 29–28–103(a)] shall not apply to any action resulting from exposure to asbestos ...

his wife filed this action on May 2, 1990, within one year of the date he discovered that he was suffering from an asbestos-related lung disease.

## II

The resolution of this case depends upon the proper interpretation of T.C.A. § 29–28–103(a). That statute provides, in pertinent part, as follows:

> Any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought within the period fixed by §§ 28–3–104, 28–3–105, 28–3–202 and 47–2–725, but notwithstanding any exceptions to these provisions it must be brought within six (6) years of the date of injury, *in any event, the action must be brought within ten (10) years from the date on which the product was first purchased for use or consumption* ...

(Emphasis added). A threshold question in this case is whether the italicized part of the statute is properly characterized as a statute of limitations, or as one of repose. Wyatt argues that it should be classified as a conventional statute of limitations, pointing out that it was a part of a section entitled "Statute of Limitations" when the TPLA was originally enacted by the legislatures [5]; and that the 1979 asbestos exception [6] to the TPLA refers to "limitation of actions" but not "repose." We think, however, that the analysis should revolve around the substance of the statutory language, and its logical and intended effect, rather than how it was entitled or labeled.

■■■ Courts in Tennessee have consistently pointed out the distinction between a statute of limitations and a statute of repose. The former has been described as affecting only a party's remedy for a cause of action, while the running of a statute of repose has been said to "nullif[y] both the remedy and the right." *Bruce v. Hamilton*, 894 S.W.2d 274, 276 (Tenn.App.1993); *Via v. General Elec. Co.*, 799 F.Supp. 837, 839 (W.D.Tenn. 1992). Generally speaking, the critical distinction in classifying a statute as one of repose or one of limitations is the event or occurrence designated as the "triggering event," i.e., the event that starts the "clock" running on the time allowed for the filing of suit. In a traditional statute of limitations, the triggering event is typically the accrual of the action, i.e., when all the elements of the action, including injury or damages, have coalesced, resulting in a legally cognizable claim. A statute of repose, on the other hand, typically describes the triggering event as something other than accrual, prompting courts to note that such statutes are "entirely unrelated to the accrual of any action ..." *Watts v. Putnam Co.*, 525 S.W.2d 488, 491 (Tenn.1975), *Cronin v. Howe*, 906 S.W.2d 910, 913 (Tenn.1995).

Because a statute of repose sets the triggering event as something other than accrual, it can have the effect of barring a plaintiff's claim before it accrues, most typically before the plaintiff becomes aware of his or her injury. *See Cronin*, 906 S.W.2d at 913; *Bruce*, 894 S.W.2d at 276 ("A statute of repose is a substantive provision because it expressly qualifies the right which the statute creates by barring a right of action even before the injury has occurred if the injury occurs subsequent to the prescribed time period.") This possibility has prompted courts to hold that statutes of repose affect the substantive right of a party to bring suit, as well as the remedy. *Id.*

■■■ The ten-year period set forth in T.C.A. § 29–28–103(a) is properly characterized as a statute of repose. Its triggering event is the "date on which the product was first purchased for use or consumption." It starts the "clock" running from that occurrence, and the time is up after ten years. When the TPLA was originally enacted in 1978, the legislature did not provide an exception or allowance for latent injuries or the like; its use of the words "in any event" underscores the unconditional nature of the ten-year limitation. Further, several courts that have addressed this issue, or issues closely related to it, have interpreted the ten-

---

**5.** *See* footnote 2, this opinion.

**6.** *See* footnote 3, this opinion.

year period to be a statute of repose. *Via,* 799 F.Supp. at 839; *Jones v. Five Star Engineering, Inc.,* 717 S.W.2d 882, 883 (Tenn. 1986); *Myers v. Hayes Int'l. Corp.,* 701 F.Supp. 618, 624–25 (M.D.Tenn.1988); *Wayne v. TVA,* 730 F.2d 392, 400–01 (5th Cir.1984). Accordingly, we hold that the ten-year period established by T.C.A. § 29–28–103(a) is a statute of repose.

### III

The next issue we must address is the effect of the TPLA's *enactment* upon Wyatt's cause of action. Wyatt and supporting *amici* strenuously and ably argue that since Wyatt's cause of action did not accrue until after the asbestos exception [7] became effective in 1979, that exception should apply to, and save, his action. They rely upon Tennessee caselaw to the effect that "there is no vested right in a statute of limitation unless and until the cause or action has accrued and expired." *Watts,* 525 S.W.2d at 492. If the ten-year period was a conventional statute of limitations, we would agree, since a statute of limitations generally does not start to run until accrual, which, under the discovery rule (*see Teeters v. Currey,* 518 S.W.2d 512 (Tenn.1974); *McCroskey v. Bryant Air Cond. Co.,* 524 S.W.2d 487 (Tenn. 1975)), does not occur until the plaintiff discovers or should have discovered his or her injury.

Since the ten-year period set forth in T.C.A. § 29–28–103(a) is a statute of repose, we do not believe it is logical to focus on the date of accrual, since, as noted above, the statute runs from the triggering event without regard to accrual. In the present case, the plain language of T.C.A. § 29–28–103(a) requires an interpretation that the ten-year period starts to run from and after the date of the product's original sale for use or consumption. Since it is undisputed that all of the products complained of in this case were sold more than ten years prior to the passage of the 1978 enactment of the TPLA, that act, specifically T.C.A. § 29–28–103(a), barred the Wyatts' causes of action, both the right and the remedy, on July 1, 1978, the date the TPLA became effective. The plain language

of the TPLA so dictates, and since it is clear and unambiguous we should look no further for its construction. *Hamblen Co. Ed. Ass'n. v. Hamblen Co. Bd. of Ed.,* 892 S.W.2d 428, 431–32 (Tenn.App.1994), *Carson Creek Vacation Resorts, Inc. v. State,* 865 S.W.2d 1, 2 (Tenn.1993), *Turner v. Harris,* 198 Tenn. 654, 281 S.W.2d 661, 665 (1955).

The defendants argue that the effect of the extinguishment of Wyatt's cause of action on July 1, 1978, was to create in them a vested right to rest in repose. Therefore, they argue, the asbestos exception of 1979 cannot retroactively save Wyatt's claim without running afoul of Article I, Section 20 of the Tennessee Constitution. We agree.

Article I, Section 20 of the Tennessee Constitution states

[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made.

The Tennessee Supreme Court, regarding "retrospective" laws, has stated that they

are generally defined, from a legal standpoint, as those which take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed.

*Morris v. Gross,* 572 S.W.2d 902, 907 (Tenn. 1978).

It has long been the law in Tennessee that when a cause of action is barred by a statute of limitation, in force at the time the right to sue arose, and until the time of limitation expired, that the right to rely upon the statute as a defense is a vested right that can not be disturbed by subsequent legislation.

*Girdner v. Stephens,* 48 Tenn. 280, 286 (Tenn.1870); *see also Henderson v. Ford,* 488 S.W.2d 720, 722 (Tenn.1972); *Collier v. Memphis Light, Gas & Water Div.,* 657 S.W.2d 771, 775 (Tenn.App.1983); *Morford v. Yong Kyun Cho,* 732 S.W.2d 617, 620 (Tenn. App.1987); *Buckner v. GAF Corp.,* 495 F.Supp. 351, 353 (E.D.Tenn.1979). Thus, it

---

7. *See* footnote 4, this opinion.

is clear that in Tennessee a defendant has a vested right in a statute of limitations defense if the cause of action has accrued and the time allotted has expired. By analogy, a defendant has a vested right in a statute of repose if the triggering event has occurred and the time expired. As we have noted, on July 1, 1978, the statute of repose operated to cut off Wyatt's right to pursue his cause of action. To allow the General Assembly to revive it retroactively through the 1979 asbestos exception would be imposing a new duty on defendants "in respect of transactions ... already passed," in violation of the Tennessee Constitution.

Consequently, we hold that the 1979 asbestos exception cannot be applied retroactively to revive Wyatt's already-barred cause of action. This result is not pleasant, for it means that Wyatt's claim was barred by the TPLA before he could be rationally expected to have been aware that he suffered an injury.[8] However, it is clear that the legislature has the constitutional power to enact statutes of repose which, by definition, have the possible effect of barring a claim before it accrues. *See Jones*, 717 S.W.2d at 883 (upholding constitutionality of TPLA statute of repose); *Harrison v. Schrader*, 569 S.W.2d 822 (Tenn. 1978); *Harmon v. Angus R. Jessup Assoc., Inc.*, 619 S.W.2d 522 (Tenn.1981). Further, it is what the clear and unambiguous language of the statute demands. In its 1978 enactment, the legislature could have placed exceptions on the repose statute for products sold prior to a certain date or for latent injury cases or the like, but did not do so. It is not the prerogative of the courts to read into the statute an exception where none exists. The words of the late Justice Joe Henry of the Supreme Court, regarding another statute of repose, are particularly relevant here:

We do not necessarily agree philosophically with the results we reach. We can only construe the statute as it is, not as we think it ought to be.

*Watts,* 525 S.W.2d at 494.

Wyatt argues that a construction such as the one we have applied in this case would create a conflict with T.C.A. § 28–3–104(b), which states,

For the purpose of this section, in products liability cases:

(1) The cause of action for injury to the person shall accrue on the date of the personal injury, not the date of the negligence or the sale of a product;

(2) No person shall be deprived of the right to maintain a cause of action until one (1) year from the date of the injury; and

(3) Under no circumstances shall the cause of action be barred before the person sustains an injury.

A cursory comparison of the language quoted above with that of T.C.A. § 29–28–103(a) (*"notwithstanding any exceptions to these provisions* [which would include § 28–3–104(b) ] ... *in any event,* the action must be brought within ten (10) years ..." (emphasis added) provides the answer to that contention—there is no conflict between the two statutes.

### IV

Because this case may be subject to further appellate review, we now turn to the second issue in this case: the constitutionality, under Article XI, Section 8 of the Tennessee Constitution, of the asbestos exception itself. That constitutional section provides:

The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie,

---

8. This unpleasant result is perhaps what the federal Sixth Circuit was focusing upon when, in the case of *Murphree v. Raybestos–Manhattan, Inc.,* 696 F.2d 459, 462 (6th Cir.1982) it predicted that "[t]he Tennessee Supreme Court will no longer use the vested rights doctrine to prevent the Tennessee legislature from ameliorating the harshness of a rule that bars a plaintiff's claim

before he discovers it." *See also Clay v. Johns–Manville Sales Corp.,* 722 F.2d 1289 (6th Cir. 1983); *Cathey v. Johns–Manville Sales Corp.,* 776 F.2d 1565 (6th Cir.1985). Obviously, to the extent that these cases differ from our present analysis, we express our disagreement with their holdings and predictions.

[immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law. No corporation shall be created or its powers increased or diminished by special laws but the General Assembly shall provide by general laws for the organization of all corporations, hereafter created, which laws may, at any time, be altered or repealed and no such alteration or repeal shall interfere with or divest rights which have become vested.

The defendants argue, and the trial court agreed, that the asbestos exception, which states simply that "the foregoing limitation of actions [T.C.A. § 29–28–103(a) ] shall not apply to any action resulting from exposure to asbestos," unfairly singles out asbestos producers and sellers by exempting asbestos claims from the statute of repose, while applying the statute to manufacturers of products similar to asbestos.

On this point, the trial court stated the following, which rather succinctly summarizes the defendants' position:

> It does not appear in the legislative history and record furnished to the Court that the legislature gave any consideration to any other product that produced injury only after prolonged exposure or for which there was a period of latency before the onset of symptoms and injury and discovery of whatever disease process may have been caused by exposure to or use of such products. More particularly, nothing has been furnished to the Court ... that suggests any reason for treating asbestosis or other disease conditions resulting from exposure to asbestos from other diseases that occur only after prolonged exposure to products or which manifest an onset of symptoms and injury after a period of latency ... Frankly, no satisfactory explanation has been given to the Court why the legislature chose to exempt asbestos from the strictures of the Tennessee Products Liability Act, did not include manufacturers and producers and sellers of other products which were thought to have a propensity to cause injury only after prolonged exposure or from which injury became manifested only after a period of latency.

The trial court struck down the asbestos exception as improper class legislation.

## V

■ Tennessee courts have long recognized the similarity between Article XI, Section 8, and the equal protection clause of the federal Constitution, and have therefore applied an equal protection analysis to constitutional challenges brought pursuant to Article XI, Section 8. *Motlow v. State,* 125 Tenn. 547, 145 S.W. 177, 180 (1912); *Estrin v. Moss,* 221 Tenn. 657, 430 S.W.2d 345, 348 (1968); *King–Bradwall Partnership v. Johnson Controls, Inc.,* 865 S.W.2d 18, 21 (Tenn. App.1993) ("the Supreme Court of Tennessee 'has adopted a virtually identical equal protection standard or analysis under Article XI, Section 8 of the Tennessee Constitution.' ") The defendants do not argue, nor could they, that infringement of a fundamental right is involved here, or that the legislature has created a classification involving a "suspect" or "protected" class, such as race or national origin. Therefore, the standard to be applied is the familiar "rational basis" standard. *King–Bradwall,* 865 S.W.2d at 21; *City of Memphis v. International Broth. of Elec. Wrkrs. U.,* 545 S.W.2d 98, 102 (Tenn.1976); *State v. Tester,* 879 S.W.2d 823, 828 (Tenn. 1994).

■ The basic analytical principles of our equal protection analysis were set forth over eight decades ago in the landmark case of *Motlow v. State,* 125 Tenn. 547, 145 S.W. 177, 180 (1912), and they have remained unchanged since then:

> "(1) The equal protection clause of the fourteenth amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore it is purely arbitrary. (2) A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. (3) When the classifica-

tion in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. (4) One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." The same rules must apply in disposing of a question arising under Article 1, § 8 of our Constitution of 1870 ...

*Id., quoting Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). The touchstone in determining whether the legislature has drawn a proper classification is its reasonableness; and as the above guidelines demonstrate, the legislature is given fairly broad leeway, for when a court determines that a classification is unreasonable, it is substituting its judgment for that of the legislature, and this it should not do unless the classification is clearly arbitrary and has no rational basis.

▮▮▮▮ Applying these principles to the instant case, we cannot say that the General Assembly's decision to classify asbestos-related claims differently from other latent-injury claims is so patently arbitrary as lacking any rational basis. It is perhaps true that the legislature's purpose might have been better or more effectively served by a general exemption for all latent injury claims; however, the Tennessee Supreme Court has noted,

"... the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.... The legislature may select one phase of one field and apply a remedy there, neglecting the others.... The prohibition of the Equal Protection Clause goes no further than the invidious discrimination."

*Swain v. State,* 527 S.W.2d 119, 121 (Tenn. 1975), *quoting Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). The Supreme Court's oft-quoted statement that "[i]t is no requirement

of equal protection that all evils of the same genus be eradicated or none at all" is also apposite here. *Railway Express Agency v. People of New York,* 336 U.S. 106, 110, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1948).

The asbestos exception has already withstood several very similar equal protection challenges. Courts in each case have upheld the exception, finding a rational basis for the classification. *Spence v. Miles Laboratories, Inc.,* 810 F.Supp. 952, 961 (E.D.Tenn.1992) (upholding exception in face of equal protection challenge that argued AIDS patients and asbestos victims are similarly situated); *Wayne v. TVA,* 730 F.2d 392, 404 (5th Cir. 1984) (upholding TPLA asbestos exception in face of equal protection challenge arguing exposure to latent-injury-causing phosphate slag similar to asbestos exposure); *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1139 (6th Cir.1986) ("we think the statute's exemption of asbestos-related injuries has a rational basis if only because such injuries often take considerably longer than ten years to manifest themselves.") The court in *Pottratz v. Davis,* 588 F.Supp. 949 (D.Md.1984), presented with an equal protection challenge to a similar asbestos exception in an Oregon statute, responded with a very apposite, if somewhat chilling, statement:

The reasonableness of statutes of limitations as specially applied to asbestosis claims has been repeatedly recognized. [citations omitted] The legislature is entitled to much deference in this matter, and the statute should be presumed to be constitutional. It will simply be noted that among the many factors which place asbestos-related injuries in a class by themselves, it is known that asbestos-related diseases are not dependent upon repeated inhalations or exposures, but upon the presence of the fiber in the lungs from potentially one, initial exposure. [citation omitted] There is usually a long period of latency of up to 30 years before onset of the diseases ... Over 3000 different products in daily use at one time contained asbestos, including tooth brushes, ironing board covers, brake linings, roofing shingles, fireproofing and insulating material. [citation omitted] With these few factors in

mind, it can hardly be said that there is no rational justification for the Oregon legislature's decision to treat asbestos claimants differently from that of other claimants . . .

*Id.* at 955–56. We agree with and adopt the *Pottratz* court's reasoning on this issue. We hold that the legislature's remedial action in excepting asbestos-related claims from the TPLA's general statute of repose scheme does not offend Article XI, Section 8 of the Tennessee Constitution.

Our research has uncovered only one case in conflict with this conclusion. The Georgia Supreme Court, faced with the question presently before us in the case of *Celotex Corp. v. St. Joseph Hosp.*, 259 Ga. 108, 376 S.E.2d 880, 882 (1989), held a similar Georgia asbestos exception violative of equal protection. However, the sum total of that court's reasoning and discussion on the matter is as follows:

> This act singles out for special treatment property claims against manufacturers and suppliers of asbestos and differentiates them from *all* other claims that might be based upon other hazardous or toxic substances. Because we do not find this separate classification to be reasonable, the statute does not meet constitutional standards.

*Id.* (emphasis in original) No citation to authority was given in support of this statement. We are not so quick to substitute our judgment for the legislature's on this matter as perhaps was the *Celotex* court.

Because we hold that the appellants' claims are barred by the ten-year statute of repose in the Tennessee Products Liability Act of 1978, we affirm the judgment of the trial court. This case is remanded for the collection of costs assessed below. Costs on this appeal are taxed and assessed against the appellants.

GODDARD, P.J., and FRANKS, J., concur.

1. The plaintiffs in the Supreme Court case are the same as those in the instant case. The for-

## OPINION ON PETITION FOR REHEARING

The appellants and two of the *amici curiae* have filed petitions for rehearing. The petitioners make two points. First, they argue that we overlooked the recent Supreme Court decision in the consolidated cases of *Herbert Wyatt, et ux* [1] *v. ACandS, Inc., et al.*, and *James W. Kyle, et ux, et al. v. ACandS, Inc., et al.*, 910 S.W.2d 851, Supreme Court at Knoxville (1995) (hereinafter referred to as "the Supreme Court's *Wyatt* decision"). They contend that our opinion conflicts with that decision.

The petitioners' second point is that we were incorrect when we stated in our opinion that "it is undisputed that none of the defendants sold or distributed any asbestos-containing products relevant to this action within ten years of July 1, 1978, the effective date of the original enactment of the TPLA."

We will consider these contentions in the order stated.

The petitioners are incorrect; we did not overlook the Supreme Court's *Wyatt* decision. We were well aware of that decision before we filed our opinion in the instant case. It is our judgment that the Supreme Court's *Wyatt* decision is not controlling on the issues raised in this appeal.

The Supreme Court's *Wyatt* decision addressed two questions, i.e., "what degree of certainty of a medical condition is sufficient to place a plaintiff on notice and trigger the commencement of the statute of limitations," and "whether a tentative, preliminary diagnosis, insufficient by itself to commence the statute, activates a duty to make, with due diligence, further inquiries into the cause of a plaintiff's condition." 910 S.W.2d 851, 856–57. Both of these issues were examined by the Supreme Court in the context of the one-year *statute of limitations* found at T.C.A. § 28-3-104. The statute of repose at issue in the instant case was not at issue or even discussed in the Supreme Court's *Wyatt* decision. The Supreme Court's focus was on the issue of when a cause of action accrues, a concept that is immaterial to the expiration

mer case was pursued on appeal pursuant to the provisions of Tenn.R.Civ.P. 54.02.

of a statute of repose. The petitioners' argument based on the Supreme Court's *Wyatt* decision is without merit.

Moving to the second point raised by the petitioners, we have again reviewed the record in this case. We have concluded that we were incorrect when we stated, at two places in our opinion,[2] that the parties were in agreement that all of the appellees ceased to manufacture and distribute asbestos-containing products more than ten years prior to July 1, 1978, the effective date of the TPLA. There was no such global stipulation. What the trial court did find *and* what is "undisputed" in the record before us is the following, taken verbatim from the trial court's final judgment:

> There is no dispute that none of the above defendants sold, distributed or otherwise placed into the stream of commerce any asbestos-containing products relevant to this action *within ten (10) years of the filing of this action.*

(Emphasis added). Since the trial judge found the asbestos exception to be unconstitutional, he naturally focused on the TPLA's ten-year statute of repose and the "ten years [immediately preceding] the filing of this action." Our focus was different. Since we found the asbestos exception to be constitutional, we were concerned with the appellees' activities prior to July 1, 1979, the effective date of that exception.

▮▮▮▮ We held in our opinion that the Wyatts' action against *all* of the appellees was barred because we thought that *all* of the appellees ceased to manufacture and distribute asbestos-containing products more than ten years prior to July 1, 1978, the effective date of the TPLA and its ten-year statute of repose. The Wyatts concede that

our rationale was correct as to the appellee Owens–Illinois, Inc. This being the case, our original decision with respect to Owens–Illinois, Inc., stands. To the extent that the petitions for rehearing challenge our holding as to Owens–Illinois, Inc., they are DENIED *in toto*.

The Wyatts' petition for rehearing contends that "there is no evidence on the record that Defendant Owens–Corning Fiberglas stopped manufacturing and distributing asbestos material prior to July 1, 1968." While this assertion only involves Owens–Corning Fiberglas, it has prompted us to carefully examine the record before us *as to all of the other defendants who were awarded summary judgment.* For ease of reference, the defendants who were granted summary judgment, other than Owens–Illinois, Inc., will be referred to as "the other defendants" or "the other defendants who were granted summary judgment."

Our review of the record fails to disclose undisputed evidence of the type contemplated by Tenn.R.Civ.P. 56.03 reflecting that the other defendants ceased to manufacture and distribute asbestos-containing products more than ten years prior to July 1, 1979, the effective date of the asbestos exception. It may be that some of them did; but the evidence before us does not so indicate at this stage of the proceedings.[3] Since the record before us does not support the other defendants' right to summary judgment (given our ruling with respect to the asbestos exception), those defendants are not entitled to summary judgment. The other defendants, as the moving parties, had the burden of "persuading the court that no genuine and material factual issues exist and that [they

---

2. At page 101, of the slip opinion we said that

> it is undisputed that none of the defendants sold or distributed any asbestos-containing products relevant to this action within ten years of July 1, 1978, the effective date of the original enactment of the TPLA.

At page 103, we prefaced a statement with the following comment:

> Since it is undisputed that all of the products complained of in this case were sold more than ten years prior to the passage of the 1978 enactment of the TPLA, . . .

3. In fact, there are comments in the record made by some defense counsel to the effect that their clients had not been out of the asbestos market for ten years or more when the asbestos exception was enacted. While there are comments of other counsel indicating that their clients had been out of this business for more than ten years prior to the asbestos exception, we do not find a stipulation by the Wyatts to these statements, except as to Owens–Illinois, Inc. Statements of counsel, not stipulated to by the other side, do not qualify for consideration by us under Tenn. R.Civ.P. 56.03.

are], therefore, entitled to judgment as a matter of law." *Byrd v. Hall,* 847 S.W.2d 208, 211 (Tenn.1993). If the record is factually deficient, and we find that it is, that deficiency is fatal to the moving parties, in this case, the other defendants.

In our original opinion, we indicated on page 104 that we were addressing the constitutionality of the asbestos exception "[b]ecause this case may be subject to further appellate review." We now realize that our review of this exception was necessary, not because of possible further appellate review, but because a resolution of that issue was essential to our review of the other defendants' entitlement to summary judgment. Had Judge Rosenbalm's constitutional evaluation of the asbestos exception been sustained by us, all of the defendants would have been entitled to summary judgment based on the undisputed proof that none of the defendants placed any asbestos-containing products into the stream of commerce within ten years of the filing of this action; however, under our ruling with respect to the asbestos exception, the other defendants, based on the record before us, are not entitled to the bar of the ten-year statute of repose, and hence are not entitled to judgment in a summary fashion.

For the reasons stated herein, the petitions for rehearing as to the other defendants who were granted summary judgment are GRANTED. We modify our opinion and judgment in this case to delete our statements that it is undisputed that none of the defendants sold or distributed any asbestos-containing products within ten years of July 1, 1978, except to the extent those statements refer to Owens–Illinois, Inc. As previously indicated, those statements are true as to Owens–Illinois, Inc.

We further modify our opinion and judgment so that we now find and hold that only Owens–Illinois, Inc., is entitled to summary judgment. Our decision affirming the trial court's judgment as to that defendant stands. The judgment of the trial court awarding summary judgment to the other defendants is vacated and this case is remanded to the trial court for further proceedings not inconsistent with our original opinion as modified by this opinion.

We further modify our original opinion and judgment regarding the costs on appeal to provide that those costs are taxed one-half to the appellants and one-half to the other defendants.

Except as modified herein, we adhere to our original opinion.

IT IS SO ORDERED.

GODDARD, P.J., and FRANKS, J., concur.