IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
May 24, 2000 Session, Heard at Nashville


# JEAN CAROLYN DOTSON v. AMANDA B. BLAKE, DAN BLAKE, AND THE ESTATE OF ELVIS C. MADDOX, SR., AND MARTIN MANOR ASSOCIATES, LTD.


**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Weakley County**
**No. 2661   William B. Acree, Jr., Judge**

—————————————————————

**W1998-00710-SC-R11-CV - Filed October 4, 2000**

—————————————————————


CHIEF JUSTICE ANDERSON, dissenting.

The majority holds that a jury may allocate fault to a tortfeasor who asserts a defense of statute of repose, even though the plaintiff has no cause of action or remedy against that tortfeasor. The holding is based upon Carroll v. Whitney, ___ S.W.3d ____ (Tenn. 2000), a just released opinion in which a majority of this Court completely reversed the course of our decisions in the area of comparative fault by concluding that the allocation of fault to an immune nonparty is consistent with the principle of linking a party's liability with his or her percentage of fault as established in McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992).

In my view, both the trial court and the Court of Appeals correctly applied our decision in Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79 (Tenn. 1996), and concluded that the jury may not allocate fault to a tortfeasor who has successfully asserted a defense of statute of repose. As I wrote in dissent in Carroll v. Whitney, the majority's abrupt departure from Ridings is inconsistent with our decision in McIntyre, reflects a change in policy that undermines the consistency and reliability of this Court's decisions in the area of comparative fault, and violates the principle of *stare decisis.* Because the majority has now taken another misstep in its new direction, I must again dissent.

## ANALYSIS

## Comparative Fault Under McIntyre

The majority asserts that its holding follows the rule recently adopted in Carroll v. Whitney, ___ S.W.3d ___ (Tenn. 2000). In Carroll, the majority held that a jury may allocate fault to individuals who had statutory immunity as state employees and were not parties to the lawsuit. The majority's decision was premised on, among other things, its view that the allocation of fault to an immune nonparty is consistent with the goal of linking a party's liability with his or her percentage of fault and, therefore, is more fair to defendants who are parties to the lawsuit.

As I observed in dissent, however, the majority's premise was based on a one-sided perspective of the comparative fault system established in McIntyre:

> Contrary to the majority's depiction, McIntyre did not achieve the result of completely linking a party's liability with his or her degree of fault. We did not, for example, adopt a 'pure' system of comparative fault under which a plaintiff does not have to be less at fault than a defendant in order to recover. McIntyre, 833 S.W.2d at 57 ("We do not agree that a party should necessarily be able to recover in tort even though he may be 80, 90 or 95 percent at fault."). Thus, a plaintiff who is equally at fault or even slightly more at fault than a defendant may not recover.

Carroll, ___ S.W.3d at ___ (Anderson, C.J., dissenting). Our decision in McIntyre, therefore, examined matters of "policy and fairness to both plaintiffs and defendants." Although we did not adopt a pure system by which a party's liability is completely linked to his or her percentage of fault, we abolished the absolute defense of contributory negligence as well as the doctrine of joint and several liability. In contrast, the new course chosen by the majority has ignored the fairness foundation of McIntyre by focusing solely upon the impact of its decision as it affects fairness to defendants.

Moreover, prior to Carroll and the present case, this Court had relied upon its decision in McIntyre to reject the very same arguments now embraced by the majority with regard to allocating fault. In Ridings, we said that the "rationale of McIntyre postulates that fault may be attributed only to those persons against whom the plaintiff has a cause of action in tort." 914 S.W.2d at 81. Similarly, in Snyder v. LTG Lufttechnische GmbH, 955 S.W.2d 252, 256 (Tenn. 1997), we said that "[t]here is no question that the Court in Ridings considered the 'fairness' arguments advanced here by the defendants and made a policy decision to leave immune [nonparties] out of the assessment of fault."

I therefore disagree with the Court's overruling the application of both Ridings and Snyder in all cases except workers' compensation cases. Indeed, it bears noting that the majority's justification regarding the unique effect of subrogation in workers' compensation cases is not discussed in either Ridings or Snyder. Thus, as I wrote in my dissenting opinion in Carroll:

[O]ur comparative fault decisions beginning with McIntyre have been guided by policy and fairness concerns. As can be seen, Ridings was expressly based upon McIntyre. Nothing in McIntyre or Ridings has changed – the 'principle and procedure' remains the same. Only the Court has changed, a majority of which has decided to adopt a different policy based on its view that Ridings is now inconsistent with McIntyre and unfair to defendants because it does not fully link a defendant's liability with its degree of fault. I cannot agree with this 180 degree change in course.

Carroll, ___ S.W.3d at ___ (Anderson, C.J. dissenting).

## Statute of Repose

A statute of repose is a period of time designated by the legislature for the filing of a cause of action by a plaintiff in certain types of cases. E.g., Tenn. Code Ann. § 28-3-202 (four year statute of repose applicable to the present case). As the majority concedes, the expiration of a statute of repose may bar a plaintiff's claim even before the claim accrues. Cronin v. Howe, 906 S.W.2d 910, 913 (Tenn. 1995). A successful statute of repose defense, therefore, bars a plaintiff's cause of action as a matter of law and nullifies both the remedy and the right. Id., at 912-913; Wyatt v. A-Best Products Co., 924 S.W.2d 98, 102 (Tenn. App. 1995).

In short, a tortfeasor who successfully asserts a defense of statute of repose is similar to one who successfully asserts a defense of statutory immunity. In either case, a plaintiff has no cause of action and can assess no portion of fault against that tortfeasor. The majority, however, has now determined that a defendant is permitted to argue that fault be allocated to this tortfeasor. Again, as I wrote in dissenting from this conclusion in Carroll:

> [T]he majority's decision also fails to take into account the implications of immunity. The decision to extend immunity to a person or entity . . . is generally a legislative determination that, in theory, benefits the public as a whole. In the context of litigation, however, it creates a risk of loss that is borne by a plaintiff who cannot recover in tort from the immune person or entity. In Ridings, we balanced the risk by holding that a defendant, like the plaintiff, cannot assign fault to an immune nonparty. Without any new or intervening reason, the majority has now completely reversed course and has placed the entire risk of loss on the plaintiff.

Carroll, ___ S.W.3d at ___ (Anderson, C.J., dissenting).

As it did in Carroll, the majority rationalizes that its conclusion will "achieve the fairest possible result." It would appear, however, that it achieves the "fairest result possible" only when viewed from the perspective of a defendant, because, under the majority's newly created rule, the plaintiff has no cause of action and cannot recover from the immune or reposed nonparty while the

defendant is permitted to assign fault to the tortfeasor who has successfully asserted immunity or a statute of repose defense.

If this Court wished to drastically change policy to achieve the fairest possible result, two changes would be required in my view. One would be to eliminate the rule that completely bars the plaintiff from recovery if he or she is 50 percent or more at fault and to adopt pure comparative fault. The only class of persons under McIntyre who suffer financially out of proportion to their fault is the plaintiff who is 50 percent or more at fault. Secondly, when the legislature extends immunity to wrongdoers in the form of absolute immunity or a statute of repose on the theory that it benefits all of society, why should the plaintiff bear the entire risk of loss? The Uniform Comparative Fault Act, section 6, for example, suggests a fairer approach that would distribute the fault of immune or reposed nonparties between all the parties at fault including the plaintiff.

As these options are not a part of the majority's new fairness formula, I continue to favor the Ridings solution because it is a reasonable approach and because as I said in Carroll:

> All of the people of Tennessee, its citizens and corporations, its bench and bar, have relied on the rules laid down in McIntyre, Ridings, and their progeny, as have those who have made subsequent laws and have made choices in reliance on these principles. The rules have worked and will work in practical terms and to repudiate them will cause serious inequity and hardship. Because neither the facts nor the circumstances nor the surrounding legal principles have changed, this Court's reexamination of this case has no justification beyond a present doctrinal decision to reach a different result from the unanimous Ridings Court. That is a grossly inadequate basis for overruling a prior case and is a threat to the institutional consistency of the Supreme Court.

Carroll, ___ S.W.3d at ___ (Anderson, C.J., dissenting).

## CONCLUSION

In my view, the majority's abrupt departure from Ridings is inconsistent with our decision in McIntyre, reflects a change in policy that undermines the consistency and reliability of this Court's decisions in the area of comparative fault, and violates the principle of *stare decisis.* I would adhere to and follow the rule in Ridings and affirm the judgment of the Court of Appeals.

I therefore dissent.

_____
E. RILEY ANDERSON, CHIEF JUSTICE