**_____IN THE SUPREME COURT OF TENNESSEE**
**AT NASHVILLE**

FILED

August 30, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

JOE M. HATHAWAY, WILLIE M._    )
HATHAWAY, and CLARA B.    )
FULSON,    )
   )
       Plaintiffs/Respondents,    )
   )
v.    )
   )
FIRST FAMILY FINANCIAL    )
SERVICES, INC.,    )
   )
       Defendant/Petitioner.    )

FOR PUBLICATION

Filed: August 30, 1999

NO. 01S01-9811-FD-00203

Certified Questions of Law from
the United States District Court
for the Middle District
of Tennessee.

(John T. Nixon, Judge)

**For the Defendant/Petitioner:**
Val Sanford
A. Scott Derrick
Wayne L. Robbins, Jr.
GULLETT, SANDFORD,
ROBINSON & MARTIN, PLLC.
Nashville, Tennessee

**For the Plaintiffs/Respondents**
Malcolm L. McCune
W. Gary Blackburn
Mathew R. Zenner
BLACKBURN, SLOBEY,
FREEMAN & HAPPELL
Nashville, Tennessee

**For Amicus Curiae:**
Tennessee Consumer Finance Association
Robertson M. Leatherman
Sara Falkinham
ARMSTRONG, ALLEN, PREWITT, GENTRY, JOHNSTON & HOLMES
Memphis, Tennessee

**O P I N I O N**

DROWOTA, J.

Pursuant to Rule 23 of the Rules of the Supreme Court of Tennessee,[1] this Court accepted certification of the following two questions from the United States District Court for the Middle District of Tennessee:

> 1. In determining the service charge that an industrial loan and thrift company may charge under Tenn. Code Ann. § 45-5-403(1)(A) (Supp. 1998) upon refinancing a loan, is the amount to be subtracted from the "total amount of the loan" (as defined in § 45-5-102(17) (Supp. 1998)) the amount of the new loan that is used to pay all or a portion of the outstanding balance of the old loan from such industrial loan and thrift company to the borrower?

> 2. With respect to a violation of the limitations on loan charges and interest rates that are imposed by the Industrial Loan and Thrift Company Act, Tenn. Code Ann. §§ 45-5-101 et seq., are a borrower's remedies under Tennessee law limited to those remedies prescribed by the general statute pertaining to interest and other charges by lenders, Tenn. Code Ann. §§ 47-14-101 et seq.?

We answer the foregoing questions in the affirmative. With respect to the first question we hold that in determining the service charge that an industrial loan and thrift company may lawfully impose under Tenn. Code Ann. § 45-5-403(1)(A), the amount to be subtracted from the "total amount of the loan" (as defined in § 45-5-102(17)) is that portion of the refinancing loan that is used to pay all or any part of the initial loan from the industrial loan and thrift company. However, interest on the initial loan that would have accrued after the date of the refinancing should not be included when computing the balance outstanding on the initial loan. With respect to the second question, we hold that a borrower's remedies for a violation of the limitations

---

[1]"The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Tenn. Sup. Ct. R. 23, § 1.

on loan charges and interest rates imposed by the Industrial Loan and Thrift Company Act, Tenn. Code Ann. §§ 45-5-101, et seq., are limited to the remedies prescribed by the general statutes pertaining to interest and other charges by lenders, Tenn. Code Ann. §§ 47-14-101, et seq.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The defendant/petitioner, First Family Financial Services, Inc., is registered with the State of Tennessee as an "industrial loan and thrift company" as defined in Tenn. Code Ann. § 45-5-102(8) (Supp. 1998). As such, it is in the business of extending loans.

Plaintiffs/respondents, Joe and Willie Hathaway obtained from the defendant's predecessor-in-interest a loan that was secured by a lien on their home in Nashville. On September 27, 1995, Mr. and Mrs. Hathaway refinanced their loan with First Family Financial Services, Inc. On that day they executed, in exchange for the second loan, a promissory note in the amount of $196,965 which included the principal amount of the second loan plus pre-computed interest (in the amount of $113,458.25) thereon over the 15-year life of the second loan. As of the date of the second loan, the outstanding balance of the Hathaways' first loan from the defendant's predecessor-in-interest was $76,602.85. Mr. and Mrs. Hathaway used proceeds from the second loan to pay this outstanding balance, thereby completely retiring the first loan.

The defendant imposed a service charge which was calculated by subtracting $76,642.85, the portion of the loan that was used to retire the initial loan balance, from $196,965, the total amount of the refinancing loan. On the remaining sum of $120,332.14, the defendant assessed a four percent service charge of $4,812.89.

Plaintiff, Clara B. Fulson, also obtained a loan from the defendant's predecessor-in-interest and subsequently engaged in two refinancing transactions with the defendant. In each of those transactions, the defendant calculated the four percent service charge in the same previously described manner.

Thereafter, the Hathaways and Fulson filed a complaint against the defendant in the Chancery Court for Davidson County, on behalf of themselves and "others similarly situated," alleging that the method used by the defendant to calculate the four percent service charge had resulted in a charge in excess of the maximum permitted by Tenn. Code Ann. § 45-5-403(1)(A) (Supp. 1998). As a result, the plaintiffs sought "the full array of remedies provided in T.C.A. § 47-14-117 (1995)." The complaint also alleged that the excessive service charge constituted fraud, negligence, misrepresentation, unjust enrichment, and violated the Federal Truth in Lending Act, the Federal Real Estate Settlement Procedures Act, and the Tennessee Consumer Protection Act.

After removing the case from the Tennessee Chancery Court to the United States District Court for the Middle District of Tennessee, the defendant filed a motion to dismiss for failure to state a claim upon which relief could be granted. The motion recited the following grounds in support of dismissal:

The service charges at issue in the Complaint are legal pursuant to the Tennessee Industrial Loan and Thrift Companies Act. The other claims of the Complaint - those not based on the Tennessee Industrial Loan and Thrift Companies Act, T.C.A. §§ 45-5-101, et seq. - do not state a claim upon which relief can be granted because the Industrial Loan and Thrift Companies Act provides the Plaintiffs their exclusive remedy. The claims of the Plaintiffs do not fall within the Tennessee Consumer Protection Act. Finally, taking the allegations of the Complaint as true, the claims under the Tennessee Consumer Protection Act, the Truth in Lending Act, and the Real Estate Settlement Procedures Act of the Plaintiffs Hathaway and Plaintiff Fulson relating to her June 1996 loan are time barred.

As a result of the defendant's motion to dismiss, the district judge entered an order certifying to this Court the two questions previously stated, and signifying that these questions are dispositive of the defendant's motion to dismiss. We accepted certification of the questions, and for the reasons hereafter explained, answer both in the affirmative.

## II.

## LEGAL AUTHORITY AND ANALYSIS

### A. Historical Background

Prior to 1978, Article 11, Section 7 of the Tennessee Constitution provided as follows:

The Legislature shall fix the rate of interest, and the rate so established shall be equal and uniform throughout the State; but the Legislature may provide for a conventional rate of interest, not to exceed 10 percent per annum.

This ten percent ceiling on conventional interest rates "restricted the availability of credit during periods of inflation." Pacific E. Corp. v. Gulf Life Holding Co., 902 S.W.2d 946, 953 (Tenn. App. 1995) (perm. app. denied July 10, 1995). To address

this problem, the General Assembly in March of 1976 called a limited constitutional convention aimed at modifying the constitutional restriction on interest rates. Id. at 953.

However, before any action had been taken by the constitutional convention, this Court, in Cumberland Capital Corp. v. Patty, 556 S.W.2d 516 (Tenn. 1977), applied the above-quoted version of Article 11, Section 7, and held unconstitutional a statutory provision expressly authorizing industrial loan and thrift companies to deduct from the face amount of loans seven and one-half percent annual interest for the full term of the loans, if the end result was an effective rate of interest in excess of the constitutional limit of ten percent.

This Court's opinion in Cumberland Capital Corp. included the following discussion of loan service charges:

> 1. The Legislature may not authorize a lender to arbitrarily fix a monthly expense fee, . . . nor to charge all borrowers the maximum fee, in addition to interest . . .
>
> 2. The lender and the borrower are free to agree upon a reasonable service charge within the statutory limit, . . . but this 'freedom of contract' is limited by Article 11, Section 7 relating to conventional interest, . . . and is further limited and governed by other principles set forth in this sequence.
>
> 3. Service charges must bear a reasonable relation to the expense and service of the lender . . . .
>                                      . . . .
> 5. The service charge amounts to usury if exacted as additional compensation for the use of money in attempted evasion of the statutes against usury. . . .
>
> 6. The service charge may not include overhead expenses such as rents, salaries, and loan losses, . . . but this does not preclude

charging for services directly related to the loan rendered by salaried employees. It only excludes indirect or extraneous expense. . . .

. . . .

We hold that any service charge in excess of the fair and reasonable worth of expense and service attributable directly to a loan must be treated as additional compensation to the lender and constitutes interest. Any such excess must be added to the stated, or resulting, amount of interest in order to determine the validity of the charge. The excess, of course, is conventional interest.

Installment maintenance fees, as set forth in Sec. 45-2007(h) are to be governed by the same rules.

We do not hold Sections 45-2007(i) or (p) to be unconstitutional. We do hold, that, in order to sustain the constitutionality of these subsections, they must be construed and interpreted as hereinabove set forth, and not as established, uniform, fixed, rigid or arbitrary charges, . . ."

Id. at 535 (emphasis added) (citations omitted).

On December 1, 1977, shortly after this Court rendered its decision in Cumberland Capital Corp., the constitutional convention that had been called in March of 1976 adopted a proposed amendment to rewrite Article 11, Section 7. This amendment was approved by the electorate on March 7, 1978, and the governor proclaimed it adopted on March 31, 1978. Pacific E. Corp., 902 S.W.2d at 953. Therefore, Article 11, Section 7, as amended in 1978, is currently in effect and provides as follows:

Sec. 7. Interest. - The General Assembly shall define and regulate interest, and set maximum effective rates thereof.

If no applicable statute is hereafter enacted, the effective rate of interest collected shall not exceed ten percent (10%) per annum.

All provisions of existing statutes regulating rates of interest and other charges on loans shall remain in full force and effect until July 1, 1980, unless earlier amended or repealed.

As a result of this 1978 constitutional amendment, "[t]he Ninety-First General Assembly convened in 1979 faced with the prospect of the imminent expiration of all existing statutes governing interest rates. Accordingly, it enacted several pieces of legislation completely reforming the statutes on interest and usury." Pacific E. Corp., 902 S.W.2d at 953-54 (footnote 12, describing the various laws enacted in 1979 on the subject of interest and usury, omitted).

### B. First Certified Question: Calculation of Service Charge

Included in the package of reform legislation enacted in 1979 was the Industrial Loan and Thrift Companies Act, ("Loan and Thrift Act"), which governs the conduct of industrial loan and thrift companies, such as the defendant in this matter. See Tenn. Code Ann. §§ 45-5-101, et seq. The purpose of this legislation was described as follows:

> An Act to revise and restate the Industrial Loan and Thrift Companies Act; to regulate Industrial Loan and Thrift Companies; to define terms used herein; to set maximum effective rates of interest; to authorize and limit the charges made by such persons; to regulate the powers and practices of such persons; to authorize supervision and regulation of such persons by the Commissioner of Insurance and to provide for the powers of the Commissioner of Insurance; to establish procedures, remedies and penalties, civil and criminal; to declare the purposes of the Act and to provide for its construction; and to repeal Chapter 20 of Title 45, Tenn. Code Ann. and all laws in conflict herewith.

1979 Tenn. Pub. Acts 204 (emphasis added).

The scope of the Loan and Thrift Act is described in Tenn. Code Ann. § 45-5-104 (1993 Repl.) as follows:

> This chapter applies only to persons engaged in business as industrial loan and thrift companies or industrial banks or industrial investment companies. Neither the requirement of registration nor any

other provision of this chapter shall apply to any state or national bank (other than industrial banks), any state or federal savings and loan association, any state or federal credit union, any insurance company, or any other person engaged in the business of making loans whose activities in so doing are subject to supervision and regulation by a state or federal administrative agency; nor shall the requirement of registration or any other provision of this chapter apply to licensed pawnbrokers or to any other person engaged in the sale of goods or services as such.

Industrial loan and thrift companies, such as the defendant in this case, which have registered under the Loan and Thrift Act are designated "registrants" by Tenn. Code Ann. § 45-5-102(14) (Supp. 1998). The maximum interest rates that registrants can charge for loans is set forth in Tenn. Code Ann. § 45-5-401 (1993 Repl.). The maximum rates under the Loan and Thrift Act are more than twice the earlier constitutional limit of ten percent. The Loan and Thrift Act also enabled registrants to charge uniform fixed loan services charges, which had been previously prohibited by the pre-1978 version of Article 11, Section 7 and this Court's decision in Cumberland Capital Corp.. The first certified question in this appeal involves the statutory provision that permits the imposition of fixed loan service charges, Tenn. Code Ann. § 45-5-403(1)(A) (Supp. 1998), which provides as follows:

> **Limitations on loan charges.** - No registrant under this chapter has the power to charge loan charges other than, or in amounts greater than, the following:
>
> > (1)(A) Registrants may charge a service charge in an amount equal to four percent (4%) of the total amount of the loan, which charge may be deducted in advance from the principal of the loan. This service charge shall be in lieu of all other compensation for services, expenses, detriments or commitments directly incident to the loan, except those charges which are otherwise specifically provided in this chapter. This charge is authorized and limited on the basis that it is generally reasonably related to the total costs and expenses which it is designed to cover, and in order to make the amount of such charges more certain and readily ascertainable

by such registrants, their borrowers and the commissioner; and to that end, registrants shall not be required to maintain detailed records with respect to the services, expenses, detriments or commitments covered thereby. This charge shall not, however, be imposed on <u>that portion of a loan used to pay any existing loan or part thereof owing by the same borrower</u> or spouse, or both, <u>to the same registrant</u> or any affiliated lender."

(Emphasis added).

Thus, under this statutory provision, the amount upon which the four percent loan service charge can be imposed by a registrant is determined by subtracting from the "total amount of the loan" an amount that consists of "that portion of a loan used to pay any existing loan or part thereof owing by the same borrower . . . to the same registrant." The latter phrase is not defined by the Loan and Thrift Act.

The phrase "total amount of the loan" is defined at Tenn. Code Ann. § 45-5-102(17) (Supp. 1998) as "the aggregate amount of money scheduled to be paid by a borrower to a registrant to repay a loan, including <u>principal</u> and any <u>interest</u> precomputed and deducted in advance." (Emphasis added). "Principal" is separately defined as "the total of money paid to, received by, or paid or accredited to the account of the borrower, including loan charges as provided in § 45-5-403(1), (2) and (3), as applicable, and including insurance charges for which the borrower contracts to pay pursuant to § 45-5-305." Tenn. Code Ann. § 45-5-102(13) (Supp. 1998). "Interest" is defined as

compensation for the use, detention or forbearance to collect money over a period of time, and does not include compensation for other purposes, including, but not limited to:

(A) Time-price differentials;
(B) Loan charges as provided in § 45-5-403; and

−10−

(C) Insurance charges as provided in § 45-5-305.

Tenn. Code Ann. § 45-5-102(9)(Supp. 1998).

The plaintiffs in this case do not dispute that the defendant accurately determined the "total amount of the loan" in calculating the loan service charges. Rather, the dispute between the parties centers around the determination of the amount that is to be subtracted from the "total amount of the loan" which is "that portion of a loan used to pay any existing loan or part thereof owing by the same borrower . . . to the same registrant." As stated above, the latter provision is not a defined term.

According to the defendant, this phrase means that portion of the refinancing loan used to pay the amount of the original loan that is outstanding as of the date of the refinancing, which latter amount does not include interest on the original loan that has not and will not accrue as a result of the refinancing transaction. The plaintiffs, on the other hand, interpret the phrase to mean the "total amount of the loan," as defined in Tenn. Code Ann. § 45-5-102(17), with respect to the original loan, determined as of the date of the refinancing. Under the plaintiffs' interpretation, this amount should include the interest on the original loan that would have accrued after the date of refinancing, even though the interest never, in fact, accrues because the original loan is retired by the refinancing loan.

The problem with the plaintiffs' interpretation is that no portion of the refinancing loan is used to pay such nonexistent interest. No portion of the refinancing loan is used to pay interest on the original loan that, because of the

refinancing, never in fact accrues. Thus, we agree with the defendant that no subtraction is allowed under Tenn. Code Ann § 45-5-403(1)(A) (Supp. 1998), for such nonexistent interest. Moreover, the General Assembly, having used the defined phrase (the "total amount of the loan") to establish the first variable, could have used the same defined term to establish the second variable had it intended for the phrase, "that portion of a loan used to pay any existing loan or part thereof owing by the same borrower . . . to the same registrant" to mean the same thing. The fact that the General Assembly did not use the same defined term demonstrates that it did not intend for that definition to apply to establish the second variable. State v. Lewis, 958 S.W.2d 736, 739 (Tenn. 1997).

We do not regard the disputed portion of Tenn. Code Ann. § 45-5-403(1)(A) (Supp. 1998) as ambiguous, at least not ambiguous in a manner that would justify the plaintiffs' proposed interpretation. Thus, we are not persuaded by the plaintiffs' reliance on certain portions of the legislative history of the Loan and Thrift Act. As we recently stated in Storey v. Bradford Furniture Co., Inc., 910 S.W.2d 857, 859 (Tenn. 1995):

> [i]n interpreting legislative provisions, our role is 'to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.' . . . If the intent can be determined from the plain language of the provision read in the context of the entire statutory scheme, we must conclude our inquiry there. . . . If the language is ambiguous and does not yield a clear interpretation, we may consult the legislative history for additional interpretive guidance.

(Citations omitted).

We note, however, that even if we were to regard the disputed portion of the statute as ambiguous, we would find more persuasive than the legislative history the

-12-

fact that the Tennessee Department of Financial Institutions,[2] which has been responsible for enforcing the Loan and Thrift Act, has consistently applied the defendant's interpretation of the statute. See e.g., Covington Pike Toyota, Inc. v. Cardwell, 829 S.W.2d 132 (Tenn. 1992).

Therefore, with respect to the first certified question, we hold that in determining the maximum service charge that lawfully can be imposed under Tenn. Code Ann. § 45-5-403(1)(A) (Supp. 1998), the amount to be subtracted from the "total amount of the loan," as defined in Tenn. Code Ann. § 45-5-102(17), is the amount of the refinancing loan that is used to pay all or any portion of the outstanding balance of the initial loan from the registrant to the borrower. However, interest that had not accrued before the date of the refinancing and retirement of the initial loan should not be included as part of the outstanding balance of the initial loan which is subtracted from the "total amount of the loan."

### C. Second Certified Question: Exclusive Remedy

With respect to the second certified question, we begin our analysis with Tenn. Code Ann. § 45-5-404 (1993 Repl.), which is a part of the Loan and Thrift Act. This statute provides as follows:

> **Remedies of borrowers - Defenses - Limitations of actions.**
> - The remedies of borrowers, the limitations on actions of borrowers, the defenses available to borrowers and to registrants, and the procedures applicable to such actions with respect to interest and loan charges under this chapter shall be those as prescribed by the general statute pertaining to interest and other charges by lenders and creditors.

---

[2]Formerly the Tennessee Department of Insurance and Banking.

(Emphasis added). The "general statute pertaining to interest and other charges by lenders or creditors" referred to above is Chapter 14 of Title 47 of Tennessee Code Annotated, which is entitled "Interest Rates Generally." Like the Loan and Thrift Act, this legislation was also adopted as part of the reform package in 1979. See 1979 Tenn. Pub. Acts 203; Pacific E. Corp., 902 S.W.2d at 954 n.12. Therefore, the statutes enacted in 1979, including the Loan and Thrift Act and the general statute relating to interest, created new rights and remedies for borrowers with respect to interest rates above ten percent annually and fixed uniform service charges.

In determining whether these statutes provide the exclusive remedies for borrowers, we are guided by our decision in Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 899 (Tenn. 1992), in which we stated:

> [i]f a statute creates a new right and prescribes a remedy for its enforcement, then the prescribed remedy is exclusive. Turner v. Harris, 198 Tenn. 654, 664, 281 S.W.2d 661, 665 (1955); Nashville & C.R.R. v. Sprayberry, 56 Tenn. 852, 854 (1874). However, where a common law right exists, and a statutory remedy is subsequently created, the statutory remedy is cumulative unless expressly stated otherwise . . . Further, the Legislature is presumed to know the state of the law on the subject under consideration at the time it enacts legislation.

(Citations omitted).

We determined in Hodges that the 1986 statute creating a remedy for retaliatory discharge was not the exclusive remedy because the right to a retaliatory discharge cause of action had been previously recognized by this Court in 1984.

Applying the rationale of Hodges to the facts in this case, we conclude that the remedies prescribed by the general statute pertaining to interest and other charges by lenders, Tenn. Code Ann. §§ 47-14-101 et seq., constitute the exclusive remedies for borrowers with respect to interest and loan charges under the Loan and Thrift Act. Our conclusion is grounded upon the fact that the statutes creating both the right and the remedies were enacted in 1979 as part of the reform package. Moreover, the clear language of the statute indicates that the remedies are exclusive. The statute provides that "[t]he remedies of borrowers . . . with respect to interest and loan charges under this chapter shall be those as prescribed by the general statute pertaining to interest and other charges by lenders or creditors." Tenn. Code Ann. § 45-5-404 (1993 Repl.).

The plaintiffs' reliance on our decision in Myint v. Allstate Ins. Co., 970 S.W.2d 920 (Tenn. 1998), is misplaced. In Myint, we concluded that a statute[3] which allowed imposition of a twenty-five percent penalty for a bad faith refusal to pay a loss claim under an insurance contract was not the exclusive remedy for such a violation and that the remedies of the Tennessee Consumer Protection Act also could be applied in such a situation. Myint is distinguishable from the circumstances in this case. For example, a right of action existed at common law for breach of contract, including breach of an insurance contract, long before the enactment of the "bad faith" statute. In contrast, rights and remedies with respect to fixed uniform loan charges and interest rates in excess of ten percent were created by the General

_____

[3]Tenn. Code Ann. § 56-7-105 (1994 Repl.).

Assembly in the same year. In addition, Myint was based partially on a provision of the Tennessee Consumer Protection Act, which provides in pertinent part as follows:

> The powers and remedies provided in this part shall be cumulative and supplementary to all of the powers otherwise provided by law. The invocation of one power or remedy herein shall not be construed as excluding or prohibiting the use of any other available remedy.

Tenn. Code Ann. § 47-18-112 (1995 Repl.). Though we stated in Myint that, "[e]ven when a different code section applies and is invoked to obtain relief, the Consumer Protection Act may also apply, assuming the act or practice in question falls within the scope of its application," Myint, 970 S.W.2d at 926, we did not intend to imply that the remedies of the Tennessee Consumer Protection Act apply in every circumstance. Where, as here, another remedy has been deemed exclusive, the remedies afforded by the Tennessee Consumer Protection Act do not apply.

Available remedies under the general statute pertaining to interest include making usury a defense to an action to collect a loan and recovering usurious payments that have been made. Tenn. Code Ann. §§ 47-14-110, -111 (1995 Repl.). In addition, it is possible to recover loan charges that are in excess of those permitted by the Loan and Thrift Act. Tenn. Code Ann. § 47-14-114 (1995 Repl.). The following statutory provisions afford equitable remedies relating to the imposition of excess interest:

> No person shall be entitled to an equitable remedy with respect to usury or excess loan charges unless the person seeking such remedy does equity by paying, or tendering into court, the principal plus lawful interest and loan charges then due; provided, that any contract may be reformed by suit brought in equity with respect to any regulated loan charges, brokerage commissions, or commitment fees in excess of those authorized by law upon cost bond or, in appropriate cases, on pauper's oath.

Where successful in the reformation of the instrument, the complaining party shall be rewarded reasonable attorneys' fees.

Tenn. Code Ann. § 47-14-115(b) and (c) (1995 Repl.).

When there is a deliberate violation of the provisions of the Loan and Thrift Act regarding interest and loan charges, the following remedies are provided by the statute:

Where, however, the court finds that the lender or creditor has been guilty of unconscionable conduct in a transaction by taking interest, loan charges, commitment fees, or brokerage commissions in excess of the limitations fixed by statute, that lender or creditor shall not be entitled to recover any interest, loan charges or commitment fees or brokerage commissions with respect to that transaction and shall be required to refund to the borrower or debtor any loan charges, commitment fees, or brokerage commissions, and twice the amount of any interest collected with respect to that transaction, and the borrower shall be entitled to recover reasonable attorneys' fees from the lender.

As used in this subsection, 'unconscionable conduct' includes, but is not limited to, any calculated violation of statutory limitations on interest, loan charges, commitment fees or brokerage commissions with full awareness of those limitations.

Tenn. Code Ann. § 47-14-117(c) (1995 Repl.).

Our holding that these remedies are exclusive with respect to interest and loan charges under the Loan and Thrift Act does not mean that registrants are not, under any circumstances, subject to the provisions of the Tennessee Consumer Protection Act. We decline to adopt a broad exemption. Each case must be examined on its own facts. See Pursell v. First American Nat'l Bank, 937 S.W.2d 838, 842 (Tenn. 1996) (holding that a bank's actions with regard to repossession of collateral did not fall within the Tennessee Consumer Protection Act, but declining to establish a general "banking" exemption from the Tennessee Consumer Protection Act); see also, Turner v. E-Z Check Cashing, 35 F. Supp. 2d 1042 (M.D. Tenn. 1999).

-17-

In conclusion, with respect to the second certified question, we hold that the remedies prescribed by Tenn. Code Ann. §§ 47-14-101, <u>et</u> <u>seq.</u> are the exclusive remedies of borrowers with respect to a violation of the limitations on loan charges and interest rates that are imposed by the Industrial Loan and Thrift Companies Act.

## III.

### CONCLUSION

For the reasons herein explained, we answer the questions certified by the United States District Court for the Middle District of Tennessee in the affirmative. The clerk will transmit this opinion in accordance with Rule 23, Section 8 of the Rules of the Supreme Court. The costs in this Court will be taxed equally between the plaintiffs-respondents and the defendant-petitioner.

_____
FRANK F. DROWOTA, III,
JUSTICE


**Concur:**
Anderson, C.J.,
Birch, Holder, Barker, JJ.