**REEVES–SAIN MEDICAL, INC., et al.**

v.

**BLUECROSS BLUESHIELD OF TENNESSEE, et al.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Oct. 10, 2000.

Robert B. Littleton and David L. Johnson, Nashville, TN, for appellants BlueCross BlueShield of Tennessee and Volunteer State Health Plan, Inc., d/b/a BlueCare.

Blakeley D. Matthews and Jay N. Chamness, Nashville, TN, for appellees, Reeves–Sain Medical, Inc., W. Shane Reeves, Pharm. D., and Tennessee Pharmacists Association.

## OPINION

CANTRELL, P.J., M.S., delivered the opinion of the court, in which KOCH, and COTTRELL, joined.

A state statute, Tenn.Code Ann. § 56–7–2359, prevents a health insurance issuer from excluding any licensed pharmacy or pharmacist from its list of participating providers if the pharmacy or pharmacist agrees to the terms and conditions offered to other participating providers. The Chancery Court of Rutherford County held that the statute also required BlueCross BlueShield of Tennessee to include all licensed pharmacies or pharmacists in their list of home infusion therapy providers and that the only condition the insurer could impose was a pharmacist's license. We reverse the lower court's order and finding of contempt for a technical violation of the order.

## I.

To combat the spiraling costs of providing health care insurance, insurance companies are increasingly turning to some form of managed care. One popular form of managed care is the creation of a preferred provider network, where the providers agree with the insurance company to provide services and medicine at a reduced rate in exchange for being included on the insurance company's preferred provider list. Patients covered by that insurance company get the benefit of the negotiated rates when they use the providers on the list, but they have to pay a higher portion of the costs when they use providers outside the network.

Another attempt to save money resulted in shorter hospital stays and, consequently, more treatment at home. Some patients required drug or medicine administration by intravenous infusion. This need attracted providers who put together a service called home infusion therapy, or "HIT" for short. This service is made up of two parts: the pharmacy component for supplying the drugs, and the trained professional component for administering them. So far, the state does not regulate or license the home administration component as a separate and distinct healing art. But, aside from patients and their families, the only persons who can administer home infusion therapy are those who, by virtue of their professional license, are permitted to give injections.

By early 1999 there were approximately 353 providers of this service in Tennessee. BlueCare, a managed care organization created by BlueCross BlueShield of Tennessee and Volunteer State Health Plan, Inc. to supply medical services under the state's TennCare program, went through a

process to create a high quality network of HIT providers and narrowed the list to sixteen. Some of the HIT providers who did not make BlueCare's list are the plaintiffs in this lawsuit. They were later joined by the Tennessee Pharmacy Association (TPA).

The plaintiffs sought a declaratory judgment that BlueCare was required by Tenn.Code Ann. § 56–7–2359 to include all licensed pharmacies and licensed pharmacists in its list of providers of HIT services. The statute, passed in 1998, provides as follows:

(a) No health insurance issuer may:

(1) Deny any licensed pharmacy or licensed pharmacist the right to participate as a participating provider in any policy, contract or plan on the same terms and conditions as are offered to any other provider of **pharmacy services** under the policy, contract or plan; provided, that nothing herein shall prohibit a managed health insurance issuer from establishing rates or fees that may be higher in non-urban areas, or in specific instances where a managed health insurance issuer determines it necessary to contract with a particular provider in order to meet network adequacy standards or patient care needs.

(2) Prevent any person who is a party to or beneficiary of any policy, contract or plan from selecting a licensed pharmacy of such person's choice to furnish the **pharmaceutical services** offered under any contract, policy or plan, provided the pharmacy is a participating provider under the same terms and conditions of the contract, policy or plan as those offered any other provider of pharmacy services;

(3) Permit or mandate any difference in coverage or impose any different conditions, including co-payment fees, so long as the provider selected is a participant in the contract, policy or plan involved. (Emphasis supplied)

The statute, known as the "any willing pharmacy act," requires insurance companies to include all pharmacies on their lists of providers if the pharmacy agrees to the terms and conditions offered to others on the list.

The Chancery Court of Rutherford County issued a temporary injunction, later made a final judgment, which included the following two paragraphs:

(1) It is hereby ORDERED that the defendants, BlueCross BlueShield of Tennessee and Volunteer State Health Plan, Inc., d/b/a BlueCare, their respective officers, agents, representatives, employees and successors, and all other persons in active concert and participation with them, be and hereby are permanently restrained and enjoined from excluding the plaintiffs, Reeves Sain Medical, Inc., and W. Shane Reeves, as participating providers of pharmacy services under the defendants' health insurance plan. The defendants, BlueCross BlueShield of Tennessee and Volunteer State Health Plan, Inc., d/b/a BlueCare, are further permanently restrained and enjoined from wrongfully preventing the plaintiffs, Reeves Sain Medical, Inc. and W. Shane Reeves, from dispensing home infusion therapy services to covered members of the defendants' health insurance plan pursuant to prescription orders for such services.

(2) It is hereby ORDERED that the defendants, BlueCross BlueShield of Tennessee and Volunteer State Health Plan, Inc., d/b/a BlueCare, their respective officers, agents, representatives, employees and successors, and all other persons in active concert and participation with them, be and hereby are permanently restrained and enjoined from excluding any TPA member who is

a provider of home infusion therapy services as a participating provider of home infusion therapy services under the defendants' health insurance plan, if the provider is willing to provide such services under the same terms and conditions as are offered to other providers of home infusion therapy services under the plan.

In a subsequent entry in the record, the court supplemented its findings as follows:

The prior finding of this Court has been that the action of the legislature requires BlueCross to contract with all licensed pharmacists regardless whether those pharmacists possess other credentials and qualifications which BlueCross might desire, and which various departments of the State may also require. Bluntly stated, provisions of the contract between BlueCross and a subdivision of the State which are not in conformance with the law, are illegal, and of course should not be followed.

While the Court recognizes that many of the credentials and qualifications for which BlueCross looks before contracting with a pharmacy may have great merit, the provisions of *T.C.A.* § 56–7–2359 have removed from BlueCross the opportunity to make such determinations. The legislature has provided that being a licensed pharmacist is all that is required in order for one to participate as a provider "in any policy, contract or plan." Defendant BlueCross asserts that the wording of the statute providing that a pharmacist is unable to participate "on the same terms and conditions as are offered to any other provider of pharmacy services under the policy, contract or plan" gives BlueCross the opportunity to establish the further criteria. A fair reading of the statute, however, shows that the quoted language deals with the

manner of the course of dealings, including compensation, and not with the issue of qualifications. Clearly the statute would have no meaning if in fact the health insurance issuer were able to apply such conditions at [sic] it desired to a licensed pharmacy or licensed pharmacist as a further condition of acceptance. The statute provides that it is unlawful for the issuer of the health insurance policy to deny any pharmacy or pharmacist the right to participate as a provider of services as fully as any other provider is allowed to participate, so long as the pharmacist or pharmacy is duly licensed under state law. The issuer of proper insurance has every right under the statute to establish rates or fees and may establish different fee structures for different areas, whether urban or non-urban. *T.C.A.* § 56–7–2358.

## II.

### a.

■ "The fundamental role of this court in construing statutes is to ascertain and give effect to legislative intent." *State v. Mixon,* 983 S.W.2d 661, 669 (Tenn.1999). To start, the words of the statute must be given their ordinary and natural meaning, *Blankenship v. Estate of Bain,* 5 S.W.3d 647 (Tenn.1999); and we must take care not to unduly restrict the statute's coverage or to expand it beyond its intended scope, *Davenport v. Chrysler Credit Corp.,* 818 S.W.2d 23 (Tenn.Ct.App.1991). Applying this test and considering the related statutes, we think that applying Tenn.Code Ann. § 56–7–2359(a) to home infusion therapy would be an unwarranted extension of the statute beyond its intended scope. Read as a whole, the act's scope is fairly narrow. It just requires insurance companies to open up their approved provider lists to any "licensed" pharmacy or phar-

macist providing "pharmacy" or "pharmaceutical" services on the same terms and conditions extended to all other licensed providers.

■ The General Assembly did not specifically define "pharmacy services" or "pharmaceutical services." It did define the "practice of pharmacy" in Tenn.Code Ann. § 63–10–404(31)(A) as follows:

"Practice of pharmacy" means a patient-oriented health service profession in which pharmacists interact and consult with patients and other health care professionals to enhance patients' wellness, prevent illness and optimize outcomes. The practice involves interpretation, evaluation and implementation of medical orders and prescription orders; responsibility for compounding and dispensing prescription orders, including radioactive substances; participation in drug, dietary supplement and device selection, storage, distribution and administration; drug evaluation, utilization or regimen review; maintenance of patient profiles and other pharmacy records; provision of patient education and counseling; drug or drug-related research; and those professional acts, professional decisions or professional services necessary to maintain all areas of a patient's pharmacy-related care;

It seems to us that a license to practice pharmacy does not empower pharmacists to inject drugs into a patient. A pharmacy license covers the pharmaceutical component of home infusion therapy, but by its terms it does not cover the non-pharmaceutical component. Therefore, Tenn. Code Ann. § 56–7–2359(a)(1) does not prevent BlueCare from imposing additional requirements on the non-pharmaceutical component of home infusion therapy.

### b.

■ If we looked beyond the plain words of the statute, there are other aids to which we could resort. The legislative history may be examined for interpretative guidance if the act is ambiguous. *Hathaway v. First Family Financial Services*, 1 S.W.3d 634 (Tenn.1999). Although we think the act is clear, we note that home infusion therapy is not mentioned by the individual legislators in any of the proceedings before the various committees. A more limited view of the effect of the bill is suggested by the following statements of the sponsor before the Senate Commerce Committee and the Senate Finance Ways and Means Committee:

The pharmacists are in this bill ... in the section with pharmacy and pharmacy access ... They are included in the bill which says they have an option to participate in the networks if they choose to accept those prices. That is their choice, but they have that option available to them.

. . .

The pharmacy and pharmacy access deals with allowing our pharmacists to stay in networks if they are willing to accept fee schedules provided by MCO's.

. . .

In the pharmacy issue, and there is language in the pharmacy issue that says the pharmacist, whether it's a mom or pop or a large volume change [sic], must be willing to accept the fees that are out there. . . .

These excerpts indicate an understanding by the sponsor, communicated to the committee members, that the bill mainly covered drugs or traditional pharmacy services that any mom and pop pharmacy could supply.

### III.

The court held that the defendants were technically in contempt of its order of No-

vember 22, 1999, and ordered the defendants to pay the costs associated with the contempt motion plus the plaintiff's attorneys fees.

The November 22 order stated

Pending further orders of this Court, the defendants, BlueCross BlueShield of Tennessee and Volunteer State Health Plan, Inc., d/b/a BlueCare, their respective officers, agents, representatives, employees and successors, and all other persons in active concert and participation with them be and hereby are restrained and enjoined from excluding any TPA member who is a provider of home infusion therapy services as a participating provider of home infusion therapy services under the defendants' health insurance plan, if the provider is willing to provide such services under the same terms and conditions as are offered to other providers of home infusion therapy services under the plan.

It appears that the defendants notified prospective providers of the court's initial injunction and informed them that if they were interested in becoming a provider in the defendants' HIT network they should request a copy of the terms and conditions under which they could be included. When the prospective providers asked for the terms and conditions the defendants sent them a complicated questionnaire and application that included staffing and organizational requirements that an ordinary pharmacy would never expect to meet. There is, however, no proof that the same requirements were not applied to the sixteen providers the defendants had initially included in their network.

We do not think the defendants were in violation of the November 22 order. It was not until after the court heard the petition for contempt that it specifically held that the defendants could not impose any conditions on applicants for the HIT network except a pharmacy license. Therefore, we reverse the finding of contempt and the sanctions imposed for it.

The judgment of the court below is reversed and the cause is remanded to the Circuit Court of Rutherford County for any further proceedings that may become necessary. Tax the costs on appeal to the appellees.