# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
October 12, 2007 Session

## DANNY JONES, ET AL. v. SHELBY COUNTY DIVISION OF CORRECTIONS

### Direct Appeal from the Circuit Court for Shelby County
### No. CT-003742-05    D'Army Bailey, Judge

### No. W2007-00198-COA-R3-CV - Filed February 12, 2008

The Appellant, Shelby County Division of Corrections ("SCDC"), appeals the judgment of the trial court in favor of Appellee inmates. Appellee inmates filed suit against the SCDC, under the Tennessee Governmental Tort Liability Act ("GTLA"),  for injuries sustained when a metal ventilation system fell from the ceiling while officers were performing a search of the cell block. The SCDC asserts three points of error: (1) that the SCDC is not a governmental entity, as defined by T.C.A.§ 29-20-102(3)(A) of the GTLA so as to be subject to suit thereunder; (2) that expert testimony was required as to the cause of the system's collapse; and (3) that the trial court erred in not considering the fault of unknown inmates in manipulating the ventilation system. Finding no error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J., and JOHN EVERETT WILLIAMS, SP. J., joined.

M. Dell Stiner, Assistant Shelby County Attorney and Eugene C. Gaerig, Assistant Shelby County Attorney, Memphis, Tennessee, for the appellant, Shelby County Division of Corrections.

Kenneth M. Margolis, Memphis, Tennessee, for the appellees, Danny Jones and Kevin Longelo.

### OPINION

Kevin Longelo and Danny Jones (together "Plaintiffs," or "Appellees") were inmates at the Shelby County Division of Corrections ("SCDC," "Defendant," or "Appellant") at the time the incident giving rise to the present appeal occurred. Both men were housed in the main building, block twelve. On April 7, 2004, Tony Guyton, a corrections officer for the SCDC, participated in a search of the main building, block twelve. During a search, prisoners are usually removed from the immediate area. That day, the search included the heating and air ducts on both sides of the cell block. Some of the inmates were ordered to remain on their bunks during this particular search.

At the hearing, Officer Guyton testified that, in searching the air vents, "you look with your eyes first and if you see something that is not supposed to be there, you do all you can to try and remove it." The testimony reveals that all of the duct work was mounted and flush with the ceiling, except for a portion that was supposed to be attached to a blower. This section had broken free. When Officer Guyton looked inside the duct work, he testified that he saw a broom, which he then attempted to retrieve. Unable to reach the broom with his outstretched arm or with a probe, Office Guyton shook the duct and the broom came close enough to allow him to remove it. After retrieving the broom, Officer Guyton testified that he felt the weight of the vent shift and that he held onto the duct work. Despite the fact that Officer Guyton was holding the duct work, a ten to fifteen foot section of the duct collapsed in a domino effect. Prior to this incident, the duct work had never fallen before. However, once the duct work fell, more contraband, including tobacco, marijuana, broom handles, a stinger, two cell phones, a piece of metal, and two tooth brushes were discovered therein.

Messrs. Longelo and Jones both claim injuries resulting from the duct work falling on them. On or about April 6, 2005, Messrs. Longelo and Jones filed separate complaints in the General Sessions Court against the "Shelby County Correction Center." The Complaints both allege that the Plaintiffs requested permission to move from their respective bunks when the duct began to fall, and that permission was denied. Both Plaintiffs assert that it was the negligence of the SCDC, through its employees, which caused them to sustain injuries (including brief unconsciousness). When it became apparent that the alleged damages exceeded the jurisdictional limit, verdicts (without proof) were entered in favor of Defendant in order to allow for appeal to the Circuit Court where a full trial on the merits could be had.

On June 20, 2006, Plaintiffs filed separate motions in the Circuit Court for leave to amend their respective complaints. Specifically, Messrs. Longelo and Jones sought to correct the Defendant's name from "Shelby County Correction Center" to "Shelby County Division of Corrections." On or about August 15, 2006, the trial court entered a consent order granting Plaintiffs' leave to amend their complaints. Plaintiffs brought their claims under the Tennessee Governmental Tort Liability Act, T.C.A. § 29-20-101, *et seq.* ("GTLA"), claiming negligence on the part of the SCDC in both the duct collapse and in alleged failure to provide adequate medical care. On August 29, 2006, the SCDC answered the amended complaints. In its answers, the SCDC denies the material allegations of the complaints, and raises several affirmative defenses, including failure to state a claim upon which relief can be granted, and contributory negligence on the part of unknown third parties (i.e. other inmates tampering with the ventilation system while trying to conceal contraband).

On or about October 30, 2006, the SCDC filed a motion to consolidate Mr. Longelo's and Mr. Jones' separate cases. The motion was granted by Order of November 6, 2006, and the cases were consolidated "for trial purposes only." The matter was tried to the court, sitting without a jury, on January 4 and January 8 through 11, 2007. On January 18, 2007, the trial court entered separate judgments in favor of Plaintiffs. Although Mr. Longelo was awarded $37,500.00 in damages, and Mr. Jones was awarded $25,000.00 in damages, the trial court's findings of fact are the same in both judgments, to wit:

1.	That the Defendant, [] by and through its agent, Tony Guyton was negligent in shaking the damaged HVAC ductwork in Main Building, #12 Block, Shelby County Correction Center on the morning of April 7, 2004. Moreover that the said shaking of the ductwork caused the system's collapse which resulted in injury and damage to the Plaintiff;

2.	That the Defendant [] was negligent [in] its failure to properly inspect an[d]/or maintain the HVAC system in the Main Building, #12 Block, Shelby County Correction Center up until the morning of April 7, 2004. Moreover that said failure caused the system's collapse which resulted in injury and damage to Plaintiff;

The SCDC filed a timely notice of appeal, and the judgment of the trial court was stayed pending this appeal. On May 8, 2007, the SCDC filed a motion to consolidate the cases for purposes of appeal. By Order of May 21, 2007, this Court granted the motion. On appeal, the SCDC raises four issues for review as stated in its brief:

1.	Whether Plaintiffs sued the proper party because Shelby County Division of Corrections lacks legal standing and is a non-entity.

2.	Whether the statute of limitations (pursuant to the TGTLA) to amend the Complaint to bring in Shelby County as a party defendant had expired.

3.	Whether the Plaintiffs met their burdens of proof as to cause in fact because the Plaintiff needed to produce expert proof as to the cause of the collapse of the mechanical device.

4.	Whether the Court should have considered the comparative fault of third parties, i.e. inmates, in their negligent actions of tampering with the mechanical device.

This Court reviews findings of fact made by a trial court sitting without a jury under a *de novo* standard with a presumption of correctness for those findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d) (2007). This Court reviews a trial court's conclusions of law *de novo* with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id.*; *see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

*Proper Party*

The Tennessee Governmental Tort Liability Act ("GTLA"), T.C.A. §§ 29-20-101, *et seq*., grants governmental entities immunity from suit "for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or otherwise." T.C.A. § 29-20-201(a) (2000). The Act carves out certain exceptions to this immunity, including an exception for "injuries proximately caused by the negligent act or omission of any employee within the scope of his employment," which is the exception under which Messrs. Longelo and Jones bring their suit.

Tennessee Code Annotated § 29-20-102(3)(A) (Supp. 2007) defines a "governmental entity," in relevant part, as follows:

> [A]ny political subdivision of the state of Tennessee including, but not limited to, any municipality, metropolitan government, county . . . or any instrumentality of government created by any one (1) or more of the named local governmental entities or by an act of the general assembly[.]

As set out above, Messrs. Longelo and Jones named the SCDC as the sole Defendant. On appeal, Appellant asserts that the SCDC is not a municipality, government, or county. Consequently, the SCDC asserts that it is not a cognizable legal entity subject to suit under the GTLA.

It is well settled that, when interpreting a statute, the court is to "ascertain and give effect to the legislative intent without unduly restricting or expanding the statute's coverage beyond its intended scope." *Hathaway v. First Family Fin. Servs., Inc.*, 1 S.W.3d 634, 640 (Tenn. 1999) (citations omitted). We must ascertain the intent of the legislature from the natural and ordinary meaning of the statutory language and in context of the entire statute, without forcing a construction that would limit or expand its scope. *JJ & TK Corp. v. Bd. of Comm'rs*, 149 S.W.3d 628, 630-31 (Tenn. Ct. App. 2004). When the language of a statute is clear, we must use the plain, accepted meaning of the words used by the legislature to ascertain the statute's purpose and application. If the wording is ambiguous, however, we must look to the entire statutory scheme and at the legislative history to ascertain the legislature's intent and purpose. We must construe statutes in their entirety, assuming that the legislature chose the words of the statute purposely, and that the words chosen "convey some intent and have a meaning and a purpose" when considered within the context of the entire statute. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

Turning to the language used in § 29-20-102(3)(A), *supra*, we first note that, although the statute specifically lists municipalities, metropolitan governments, counties, etc. as governmental entities, the statute clearly does not limit the definition only to those entities specifically enumerated - - i.e. "including, *but not limited to* . . ." (emphasis added). Moreover, the statute unambiguously includes "any instrumentality of government created by any one (1) or more of the named local governmental entities" in its definition of governmental entity. There can be no doubt that the SCDC is, in fact, an instrumentality of Shelby County government. This reading of the statute is

bolstered by our case law. There are numerous cases in Tennessee where the named defendant in a GTLA case is not one of the entities specifically listed in the statutory definition of governmental entity. For example, in *Sears v. Metropolitan Nashville Airport Authority*, No. 01A01-9703-CV-00138, 1999 WL 536341 (Tenn. Ct. App. July 27, 1999) (*no perm. app. filed*), this Court held that the Nashville "Airport Authority is a 'governmental entity' as defined in Tenn. Code Ann. § 29-20-102(3) (Supp. 1998) because it is an instrumentality of government created by act of the General Assembly and the Metropolitan Government of Nashville and Davidson County." Likewise, in *Largin v. Williamson County Animal Control Shelter/Center*, No. M2005-01255-COA-R3-CV, 2006 WL 2619973 (Tenn. Ct. App. Sept. 12, 2006) (*no perm. app. filed*), the named defendant, Williamson County Animal Control Shelter/Center, is treated as a governmental entity for purposes of the GTLA. These are just two of the numerous cases where the named defendant is not specifically defined as a governmental entity in the GTLA.

Nonetheless, even if we assume, *arguendo* (which we do not), that the Plaintiffs in this case should have listed Shelby County as their defendant, we cannot lose sight of the fact that the SCDC accepted service, filed responsive pleadings, proceeded through discovery, and on to trial, without specifically addressing the issue now raised. The SCDC contends that, in raising the Tenn. R. Civ. P. 12.02 defense in its answer, the Plaintiffs were put on notice that they would have to defend on the grounds of standing. We disagree. The boilerplate language that "[p]laintiff has failed to state a claim upon which relief can be granted pursuant to Tenn. R. Civ. P. 12.02(6)" lacks sufficient specificity. Moreover, it was not until the close of plaintiffs' proof in this case that the SCDC made any specific argument that it was not properly before the court, to wit:

> MS. STINER [attorney for SCDC]: . . . . And I would submit, Your Honor, while the act that occurred was by a...person who worked at the Division of Corrections, that the Division of Corrections is just that, a division of Shelby County Government.
>
> And the proper person or party should have been Shelby County government or Shelby County, Tennessee. . . .
>
> . . . .
>
> THE COURT: Well, it seems to me that on the issue about the governmental - - the name of the governmental entity sued - - has that been raised previously, specifically in the pleadings or in any motion prior to now?
>
> MS. STINER: Yes, Your Honor. It has. In the answer to the amended complaint, under affirmative defense five, paragraph two, defendant admits that Shelby County Division of Corrections is a division of Shelby County, Tennessee; however, defendant denies that Shelby County Division of Corrections is a governmental entity as alleged in paragraph two of the amended complaint.
>
> . . . .

THE COURT:    Well, I guess - - first of all, I think Mr. Margolis [attorney for Messrs. Longelo and Jones] is right as far as the timeliness of it.  I mean, we are half way through the trial before the issue of whether the governmental immunity waiver properly passes through to the County's division of corrections.

. . . .

And even if it were timely, I would exercise discretion to - - I don't see - - I've not heard any testimony about any prejudice to the County on this matter.  So I would certainly allow an amendment to conform to any necessary party identity for purposes of the governmental tort liability.

We agree with the trial court's assessment.  In the first instance, the SCDC's argument on this issue was not timely in the trial court.  Furthermore, even if we allow that the argument was procedurally and substantively valid, we nonetheless conclude, as did the trial court, that Shelby County was not prejudiced as a result of the SCDC being named the sole Defendant herein.  Consequently, under Tenn. R. Civ. P. 15.01 or Tenn. R. Civ. P. 15.02, an amendment to the complaint would have been properly granted to allow for the naming of the Shelby County as a defendant.  However, as discussed above, no such amendment is necessary because the SCDC, as a division of Shelby County Government (a fact that the Defendant, through its attorney, admits at the hearing, *see supra)*, is, *ipso facto*, an instrumentality of Shelby County Government and, therefore, under the definition above, is a governmental entity for purposes of the GTLA.  The SCDC's argument concerning the statute of limitations for filing an amendment to the complaint is, therefore, moot.

### *Expert Proof as to Causation*

On appeal, the SCDC argues that the Plaintiffs were required to put on expert proof as to the cause of the ventilation system collapse.  We disagree.  It is well settled that causation in a negligence case is a question of fact, which we review with a presumption of correctness.  Tenn. R. App. P. 13(d).   Here, the question of what caused the ventilation system to fall is a judgment that does not require specialized skills, or information that an ordinary person would not possess.  Rather, common sense dictates the finding in this case.  The undisputed testimony is that the duct work was partially detached from the blower when Officer Guyton entered the cell block to conduct the search.  However, no definitive evidence was adduced as to what caused the ductwork to come loose from the blower (although Defendant asserts that this was caused by other inmates tampering with the ventilation system in order to hide contraband, which assertion we will address below). At any rate, there is no evidence to suggest that the there was any immediate threat that the ductwork would fall from the ceiling.  Rather, the undisputed evidence is that the ductwork was attached to the ceiling until Officer Guyton shook it.  It was not until the Officer manipulated the ductwork that it started to fall.  Moreover, Officer Guyton testified that, when an object is not reachable with an outstretched arm or with a probe,  the usual procedure would be for the officer to call maintenance for assistance.  Office Guyton testified that he did not make such a call to maintenance in this case.  Rather, he shook the vent to bring the broom closer to him, and this act started (or caused) the vent

to shift and to become detached from the ceiling. Marilyn Clark, Officer Guyton's direct supervisor, was present at the time the ventilation system collapsed. Officer Clark testified, in relevant part, as follows:

> Q. [to Officer Clark]: Okay. You're saying that Officer Guyton shook the vent to attempt to dislodge a handle so it would slide down the lip it was resting on?
>
> A. Yes.
>
> Q. You observed that?
>
> A. Yes.
>
> Q. You said, as he shook the vent, a section of it fell. Now, did you observe what section fell?
>
> A. Yes . . . .

Both of the Plaintiffs also testified that the ventilation system fell when Officer Guyton shook it. From the record before us, we cannot conclude that the trial court erred in its finding that Officer Guyton's act of shaking the vent was the cause of it falling.

### *Comparative Fault of Unknown Inmates*

The SCDC also asserts that the trial court did not give proper consideration to their theory that the actions of unknown inmates, in putting items inside the ductwork, was the cause in fact of the system's collapse. We have reviewed the record in this case; and, while there are some vague references to indicate that inmates occasionally manipulate the ductwork in order to hide contraband, there is simply not enough evidence to preponderate in favor of a finding that unknown inmates caused the ductwork to fall. First, the proof in record is that other items, such as tobacco, marijuana, other broom handles, and cell phones have been found in the ductwork. However, there is no indication as to how long these items were in the vents, nor any evidence to support a finding that these items, without the intervention of Officer Guyton in shaking the vent, would have caused the ductwork to fall. Consequently, even if the trial court had inferred, from the types of items taken from the ductwork, that unknown inmates had, in fact, manipulated that system, we are nonetheless left with the fact that the system did not fall until Officer Guyton shook it. The evidence supports that finding, but does not preponderate in favor of the SCDC's assertion that unknown inmates caused this accident.

For the foregoing reasons, we affirm the Order of the trial court. Costs of this appeal are assessed against the Appellant, Shelby County Division of Corrections, and its surety.

_____
DAVID R. FARMER, JUDGE